# JACOB DARST
## v.
## R. J. AND W. G. DOOM.

*Contracts—Action on—Signature by Alleged Agent—Proof of Agency Must Precede Admission in Evidence—Alteration Subsequent to its Signature—Instructions—Evidence.*

1. Where a contract sued on was executed by a party purporting to act as agent of the principal, and his power so to act is denied, it is error to admit the contract in evidence without proof of the agent's authority, or of a ratification by the principal subsequent to the execution of the contract.

2. Where such contract was received by the alleged agent in a letter from plaintiffs, signed by such agent in the principal's name, and returned to plaintiffs with a letter of the same date relating thereto and explanatory thereof, such letter is admissible in evidence.

3. In a contract relating to the employment of an agent for the sale of real estate, where the term "advertising" is used, such term, in the connection used, must be held to denote the publication of a notice in some newspaper.

[Opinion filed December 8, 1890.]

Appeal from the County Court of Peoria County; the Hon. Lawrence W. James, Judge, presiding.

Messrs. W. S. Kellogg and James A. Cameron, for appellant.

Messrs. Irwin & Slemmons, for appellees.

Upton, J. This is an action to recover for money claimed to be due appellees from appellant, under an alleged agreement in writing. It was commenced in a justice court, and taken to the County Court of Peoria County, and there tried upon its merits. On hearing a judgment was rendered against the appellant for $56. A motion for a new trial was overruled, exception taken, and appealed to this court.

Appellees' claim is for the alleged time and labor in showing and advertising 160 acres of land belonging to appellant, situated in Ashland, Nebraska, according to a certain alleged contract offered in evidence, which provided that "if a sale thereof should be made, without the aid of appellees, directly or indirectly, appellant should pay $50 to appellees in full for all trouble in *showing* and *advertising* said land."

It was conceded that appellees did not make sale of the land, or obtain a purchaser therefor. But appellees contend that under the claimed contract they are entitled to the sum of $50, in consideration of showing and advertising the land under the express terms of the contract. It is further conceded that the appellees had never personally met appellant nor had any business transaction with him prior to the date of the alleged contract, nor did they ever as they state have any communication with appellant after that date until they wrote him about one year after they had discovered that he had sold

the land, and demanded $50 as they now claim "for showing and *advertising* the land," as provided in the contract.

It further appears from the evidence that the appellees made no particular effort to sell the land further than to mention to persons in their place of residence that they had it for sale and point out its locality. It could be seen from the rear of the building containing appellees' office, as they say. They testify that they did not advertise the land in any other manner than as above stated, nor do they claim to have shown the land to any person with any especial view or purpose of its sale, other than calling attention to its being for sale, the price and terms, quality and description thereof, as above stated.

The contract is somewhat peculiar, and was sent by appellees to Edwin A. Casey, then residing in Chicago (who is a son-in-law of Jacob Darst), signed by him and returned to appellees. He swears he wrote the name "Jacob Darst" in the contract without any authority so to do, and without appellant's knowledge or consent; that the contract offered in evidence is not the contract sent appellees, or as then executed by him; that it was but partially filled out when he sent it to appellees. It was claimed that the contract had been changed by writing therein, after delivery thereof, many material and important conditions, among others, the condition now sought to be enforced in this suit, before recited. The appellant also claimed and testified that he gave no authority to Casey to execute the contract, and that it was made and executed without his knowledge or consent, and that he had no knowledge of its existence until about the time of bringing this suit. On the other hand, appellees, one of whom drew the contract and sent same to Casey to execute, testify that it was in no manner changed or altered after its receipt by them.

Casey received the contract in a letter from appellees, signed the name of the appellant thereto, and in the envelope inclosing the same, in return inclosed a letter to appellees of the same date of the contract and relating thereto, and explanatory thereof, which the court below, when offered in evidence on trial, excluded. This letter disclosed the fact that Casey executed the contract, and not appellant.

The question as to the alteration of the contract and Casey's agency or authority to execute the same, were at least mixed questions of law and fact, and these facts having been submitted to the jury without objection, challenge or exception upon those points in the trial court, it is too late to raise the objection here, as its execution was not denied pursuant to the statute.   Chap. 79, Sec. 56, R. S.

In this view it is manifest the court below erred in admitting the contract in evidence against the principal, without proof of the agent's authority, expressed or implied, to execute the same, or a ratification thereof by the principal, subsequent to its execution.   Fadner v. Hibler, 26 Ill. App. 639.

· The trial court also erred in refusing to admit in evidence the letter of Casey inclosed with the deed to appellees.   It was part of the *res gestæ*, and tended to establish appellant's construction in respect to the execution of the contract, and the claimed change of its terms after execution.

The court below instructed the jury in construing the clause in the contract under which this action is brought, which clause reads as follows, viz., " And if said lands are sold by them or others without the aid of Doom Bros., directly or indirectly, I will pay them fifty dollars, in full, for all trouble in showing and advertising said land," as follows: That " The plaintiff could ' advertise ' the land mentioned in the contract, introduced in evidence, within the meaning and intent of said contract, by showing the same to prospective buyers and trying to sell same, and describing same to those who would likely buy; and to comply with the terms of said contract it was not necessary to advertise the same in a newspaper, unless the word "advertise" among real estate men in the neighborhood of said land was generally understood and known to contemplate such advertisement."

In this also we think the trial court was in error.

Language and terms employed in a contract in general are to be construed in accordance with the general understanding and common acceptance of the terms and language used therein, and we think that the term "advertising," as used in

the contract, taken in connection with the subject-matter and other conditions thereof, should be construed to mean to publish a notice in some newspaper in the usual way that such notices are advertised. The word " advertise " is defined by Webster to mean " to publish notice of," " to publish a written or printed account of." Bouvier defines " advertisement " to mean " a notice published in hand bills or a newspaper."

For the reason indicated the judgment of the Circuit Court is reversed and the cause remanded for further proceedings not inconsistent with the views herein before expressed.

*Reversed and remanded.*