PEOPLE'S SAVINGS BANK *vs.* FRANK W. WUNDERLICH & another.

Middlesex.    December 4, 5, 1900. — April 3, 1901.

Present: HOLMES, C. J., KNOWLTON, MORTON, LATHROP, BARKER, HAMMOND, & LORING, JJ.

An advertisement of a sale of land under a power of sale in a mortgage described four lots which originally had been included in the mortgage but the most valuable of which had been released therefrom on payment of three fifths of the mortgage debt.  The mortgagee's attorney who published the advertisement did not

know of the release. At the time of the sale the released lot had a house upon it worth more than the amount of the original mortgage debt. The other lots which remained subject to the mortgage were vacant. The mortgage provided that in case of default the mortgagee might "sell the granted premises or such portion thereof as may remain subject to this mortgage in case of any partial release hereof." The sale took place at the time advertised. The mortgagee's attorney having discovered his mistake, the auctioneer just before the sale announced to those present that the lot with the house on it had been released, and proceeded to sell the three vacant lots. *Held,* that the sale was not a valid execution of the power given by the mortgage, as the real estate advertised was substantially different from what the mortgagee sold or had a right to sell.

BILL IN EQUITY by the assignee of a second mortgage, to redeem certain land in Arlington from a sale purporting to have been made under a power of sale in a first mortgage thereon, filed February 15, 1899.

The case was heard in the Superior Court on agreed facts and certain oral evidence by *Sheldon,* J., who made a decree, declaring the plaintiff entitled to redeem the lots described in his bill from the first mortgage, and referring the case to a master to state the account. From this decree the defendant Frank W. Wunderlich, who as assignee of the first mortgage had made the sale in question, and the defendant William Craig, the purchaser at such sale, both appealed.

It appeared from the agreed facts, that the land sought to be redeemed consisted of three lots numbered respectively 27, 28 and 32 on a certain plan. The first mortgage, dated December 2, 1891, conveyed four lots consisting of the three lots already named and another lot numbered 24. The amount originally secured by this mortgage was $2,000, but on March 18, 1892, a part payment of $1,200 was made and in consideration thereof the mortgagee released lot 24 from the mortgage, leaving the other three lots as security for the balance of *$800 still due.*

On June 13, 1894, the defendant Wunderlich acquired the first mortgage by assignment. He was then and has since continued to be in the employ of the defendant Craig. In June, 1894, there was on lot 24 a house worth about $2,500. Lots 27, 28 and 32 were vacant and have remained so.

The first mortgage contained a power of sale with a provision, that in case of default the mortgagee or his assigns might "sell the granted premises or such portion thereof as may remain subject to this mortgage in case of any partial release hereof."

On or about June 25, 1894, the first mortgage being overdue, the defendant Wunderlich instructed D. D. Corcoran, Esquire, an attorney at law, to foreclose the mortgage. Mr. Corcoran, not knowing of the release of lot 24 from the operation of the mortgage, advertised the premises described in the mortgage for sale on July 26, 1894. After Mr. Corcoran had published this notice he was informed that lot 24 had been released from the mortgage, and at the sale of the premises on July 26, 1894, the auctioneer just before the sale said to those present that lot 24 had been released, and that he should only sell lots 27, 28 and 32. He thereupon sold the last named lots to William Craig for the sum of $1,000, Craig, by his agent, Wunderlich, being the highest bidder at the sale, and within thirty days from the time of the sale a deed of the lots was executed and delivered by the defendant Wunderlich to the defendant Craig. There were present at the sale only the auctioneer, Mr. Corcoran and the defendant Wunderlich.

The judge in making the decree appealed from added the following report of facts:

" In addition to the agreed facts, I find that there was no fraud on the part of either of the defendants in the attempted foreclosure of July, 1894; that neither defendant knew of the plaintiff's second mortgage on the lots in question; that the price realized at the foreclosure sale could not be said to have been an inadequate one, though it may have been a little under the full market value of the property; and that the defendant Wunderlich began a new foreclosure in January, 1899, as averred in the plaintiff's bill for the sole reason that his grantee's title had on an examination been deemed unsatisfactory by a lawyer, and that he abandoned these proceedings on the filing of the plaintiff's bill. It did not appear when the plaintiff learned of the foreclosure of July, 1894. The plaintiff never paid or offered to pay to the defendant Wunderlich any part of the principal or interest on the mortgage held by him. The plaintiff bank in its entry of September, 1895, to foreclose its mortgage, was represented by Sanford H. Dudley, a lawyer residing in Cambridge and doing business in Boston in this Commonwealth. The plaintiff did nothing to enforce its alleged rights until the filing of this bill in February, 1899. There has been no change in

the title to the property since the foreclosure sale of July, 1894. No explanation is made of the plaintiff's delay in seeking redress, except that it filed its bill on learning that the defendant Wunderlich had begun a new foreclosure in January, 1899."

The case was argued at the bar in December, 1900, and afterwards was submitted on briefs to all the justices.

*W. B. Orcutt & W. L. Baker*, for the defendants.

*J. A. Bailey, Jr.*, for the plaintiff.

LORING, J.    The mortgage in question provided that in case of default the mortgagee might " sell the granted premises or such portion thereof as may remain subject to this mortgage in case of any partial release hereof." There was a partial release of one of the four lots originally covered by the mortgage, on payment of $1,200, leaving $800 of the mortgage debt due. Under the circumstances existing at the date of the advertisement under which the sale in question took place, all the land, over which the assignee of the mortgage had a power of sale, was the remaining three lots ; but by mistake he advertised for sale all four lots. At the time of the sale the lot (which had been released from the lien of the mortgage two years and a half before) had a house on it worth $2,500, and the remaining three lots of land were vacant. Apparently this house had not been built when this lot was released. The sum paid for the release of the one lot released was three fifths of the mortgage debt, and the price which the remaining three lots brought at the auction sale in question was one half the mortgage debt. This is a case, therefore, where the mortgagee has included in the advertisement a lot over which he had no power of sale, in addition to three lots covered by the mortgage ; further the lot, wrongfully included in the advertisement, when vacant, was worth more than the three lots rightfully included ; and in addition it had on it a house worth more than three times the amount then due on the mortgage, while the three lots covered by the mortgage were vacant land. The natural effect of such an advertisement would be to induce the belief in those, who saw it, that at the sale either the lot, on which the house was, would be put up first and would bring more than the amount of the mortgage, or that, as is generally the case, the four lots would be put up in one parcel. Therefore the class of custom-

ers, who are looking for vacant lots rather than for a dwelling, naturally would not care to attend the sale, and would not do so. The statement of the auctioneer would not help this, as there was no postponement and no new notice.

The real estate advertised was substantially different from what the mortgagee sold or had a right to sell, and the sale was not a valid execution of the power given him. *Fenner* v. *Tucker*, 6 R. I. 551.

Since the advertisement included all the land originally covered by the mortgage, while by the terms of the mortgage all the land, over which the mortgagee then had a power of sale, was the land remaining after the partial release, the defendants can get no support from cases like *Colcord* v. *Bettinson*, 131 Mass. 233, and *Bell Silver & Copper Mining Co.* v. *First National Bank of Butte*, 156 U. S. 470, where the advertisement follows the mortgage; but these cases make against them. Neither does the case of *Pryor* v. *Baker*, 133 Mass. 459, support this contention ; in that case the advertisement described what the defendant had a right to sell, what was in fact sold, and nothing more.

The land was bought by the defendant " Craig by his agent Wunderlich," who was the assignee of the mortgage and who was at the time, and since has continued, in the employ of Craig. On this evidence the court had a right to treat Craig as having no greater rights than Wunderlich. No new rights having intervened since the sale, the bill is well brought within six years after it took place.

*Decree affirmed.*