## FIRST NATIONAL CORPORATION, Respondent, *v.* PERRINE ET AL., APPELLANTS.

(No. 7,376.)

(Submitted April 2, 1935. Decided April 20, 1935.)

[43 Pac. (2d) 1073.]

*Mr. S. J. Rigney,* for appellants, submitted a brief and argued the cause orally.

*Messrs. Foot, Aronson & Foot,* for Respondent, submitted a brief; *Mr. E. B. Foot* argued the cause orally.

MR. JUSTICE MATTHEWS delivered the opinion of the court.

Mary Perrine and James A. Perrine, husband and wife, defendants, have appealed from a judgment against them and in favor of plaintiff, First National Corporation, in an action in ejectment.

On December 8, 1930, Mary Perrine executed and delivered to the First National Bank of Kalispell two real estate mortgages on lands owned by her individually, as security for the payment of certain notes aggregating $28,200. These mortgages provided that, on default of payment of principal or interest, it would be optional with the mortgagee to consider the whole sum due and payable and "immediately to enter into and upon * * * the premises, * * * and sell and dispose of the same and all benefit and equity of redemption." The mortgagor having defaulted, in March, 1932, the mortgagee elected to foreclose under the power of sale given in the mortgages. A notice of sale was prepared and personal service was had on Mrs. Perrine on March 12, and, in addition, the notice was published in a local weekly paper for four consecutive weeks, beginning with March 11 and ending April 1. The notice declared that the property would be sold at public auction at the front door of the courthouse in Cut Bank on April 15, at 3 o'clock P. M.; it correctly described the property, but included a forty-acre tract not included in the mortgages. The record does not disclose to whom this tract belonged. The sale was made pursuant to the notice, and thereat

this plaintiff became the purchaser for the consideration of $9,800, and, on completion of the sale, the mortgagee executed and delivered to the purchaser a deed to the property, which deed recites the facts leading up to and including the sale.

Mary Perrine has at all times been in possession of the premises, and no attempt was made to oust her therefrom until after the sale. In May, 1932, this plaintiff instituted an action in ejectment and later dismissed it without notice to the defendants. In January, 1933, it commenced a second action for ejectment of the defendants from this property and certain property in Cut Bank, but later dismissed the action in so far as the property here involved is concerned. The third action was commenced by the plaintiff on October 23, 1933, and therein service of the summons and a copy of the complaint was duly had on each of the defendants; on Perrine in Cut Bank, where he was then living, and on Mrs. Perrine at the ranch, twenty miles distant; neither appeared in the action, and their default was entered on November 24. Proof was thereafter made, the cause submitted by the plaintiff and taken under advisement by the court. On December 18, 1933, Mary Perrine gave notice of motion to set aside the default, which notice was accompanied by affidavits in support of the motion. The plaintiff filed affidavits in opposition to the motion. The motion was submitted on the affidavits and oral testimony on January 24, 1934, and was denied on March 17 thereafter, and was immediately followed by judgment in favor of the plaintiff. The defendants have appealed from the judgment on the grounds: (1) That the court abused its discretion in refusing to open the default and permit Mary Perrine to answer; and (2) that the court was without jurisdiction to render the judgment.

As James A. Perrine did not join in the motion to set aside the default, and in his affidavit in support of Mary Perrine's motion declares that he has no interest in the property, the subject matter of the action, the appeal must be dismissed as to him.

The affidavits in support of the motion to set aside the default attempt to show excusable neglect on the part of Mary Perrine, and that she has a meritorious defense to plaintiff's cause of action stated in the complaint.

The movant's showing on the question of excusable neglect ▇▇▇ is that she is unfamiliar with legal proceedings; that, in addition to the two former actions of identical nature, she had been haled into court by the plaintiff in several other matters; that she is informed and believes that the commencement of three actions for the same cause and the dismissal of two of them were for the purpose of harassing and confusing her, and that it did have that effect; that, on receiving the papers mentioned and noting that they were entitled in the same manner as papers theretofore served upon her in an action she did not know to have been dismissed, and being advised by the sheriff merely that the bank had given him "more papers to serve upon her," she made the mistake of believing that these additional papers had to do with the action pending and in which she had employed counsel and therefore required no action on her part.

While the plaintiff, by affidavit of one of its attorneys and of the cashier of the bank, explained its reasons for the dismissal of the two actions on grounds other than those charged by the defendant, we are of the opinion that, in view of the fact that the motion to vacate was made and heard before the entry of judgment, the court should have granted the motion unless convinced that the defendant's affidavit of merit was clearly insufficient to show that she had a defense to plaintiff's action.

It is the policy of the law that all cases be disposed of on their merits; default judgments are not favored, and, while the trial court is granted discretion in the matter of opening a default or setting aside a default judgment, it should maintain and exercise the liberal spirit which prompted the legislature to grant that power. Therefore, although this court will disturb the action of the trial court only when an abuse of discretion is manifest, such abuse may be made "manifest"

in a case wherein the court has refused to open a default, by a showing which would not be so considered in a case wherein the court has granted such a motion (*Reynolds* v. *Gladys Belle Oil Co.,* 75 Mont. 332, 243 Pac. 576), and this rule should apply with peculiar force where, as here, no judgment has been entered, and the court must deny the defendant relief before judgment can be entered.

However, the fact that the delinquent party shows excusable mistake or inadvertence, standing alone, does not warrant the opening of a default; in addition, such party must make a showing, by affidavit, stating the fact on which he will rely, or by answer tendered, that he has a prima facie defense upon the merits. (*Schaeffer* v. *Gold Cord Mining Co.,* 36 Mont. 410, 93 Pac. 344; *State ex rel. Stephens* v. *District Court,* 43 Mont. 571, 118 Pac. 268, Ann. Cas. 1912C, 343; *Danielson* v. *Danielson,* 62 Mont. 83, 203 Pac. 506.)

The affidavit of the movant shows to the court that she has stated all the facts to her attorney and has been advised by him that she has a good defense to the complaint on the merits, which defense is the same as was pleaded in each of the former actions, the latter of which has been submitted to the court as to the Cut Bank property and taken under advisement. The facts set out in the affidavit are: (1) That the title on which the plaintiff relies is based on a sale under power of sale in a mortgage, foreclosed by the mortgagee without having taken possession of the premises in order to make the sale; (2) that the sale, noticed for April 15, was advertised four times from March 11 to April 1, and 15 days elapsed between the last publication and the sale; (3) that the land was improperly described in that a forty-acre tract, not included in the mortgage, was included in the notice and sold with the other lands, and cannot now be segregated; (4) that two mortgages were foreclosed in one proceeding and are not segregated or separated so as to give notice of how sold; (5) that no return on the sale was made; (6) "that the Notice of Sale was not posted, published or personally served as required by the provisions of section 9471"; and (7) that, under the terms of the

460

mortgages, the right to sell under the power of sale was dependent upon possession, which was not secured.

Under the assertions contained in (1) and (7), it is insisted that the plaintiff's grantee could not foreclose its mortgages without first securing possession of the premises, and, in taking this position, defendant relies upon a former decision of this court interpreting statutes here involved and a mortgage containing similar provisions respecting possession and power of sale. (*Union Central Life Ins. Co.* v. *Jensen*, 74 Mont. 70, 237 Pac. 518, 520.) That decision, however, merely holds that where a mortgage grants the mortgagee the right of possession immediately upon default of the debtor, the mortgagee is entitled to possession before, and independent of, the foreclosure under the power of sale. This court therein expressly declared: "The right to possession is separate and independent from that of foreclosure and sale." The mortgages here are not before us, but there is nothing in the record suggesting that they provide that possession must be taken in order to exercise the power of sale granted, nor is there any provision to that effect to be found in the statutes which may be considered as controlling on the subject. (See secs. 8257, 9449, 9467, 9470, 9471 and 9495, Rev. Codes 1921.)

The first provision of section 9495, that "a mortgage of real property shall not be deemed a conveyance, whatever its terms, so as to enable the owner of the mortgage to recover possession of the real property without a foreclosure and sale," has been the law in this jurisdiction since the earliest territorial days. (Sec. 239, Bannack Statutes.) In a like case to this, supreme court held that the section (then sec. 371, First Div. Comp. Stats. 1887) rendered the provision for possession on default, found in a trust deed held to be a mortgage, void, but held a sale under a power of sale granted, valid, and said, "but no question arises out of this provision, as they [the mortgagees] did not enter into possession or demand possession until after sale under the provisions of the deed," and sustained a judgment in ejectment. (*First Nat. Bank* v. *Bell S. & C. Min. Co.*, 8 Mont. 32, 19 Pac. 403, 409.) Thereafter

the legislature added what is now the final provision of section 9495, that "when the mortgage confers a power of sale, as mentioned in section 8257 of the Civil Code, possession may be recovered according to the terms of the mortgage," but this provision does not require, or suggest, that possession *must* be secured before the power of sale may be exercised.

The requirement of section 9471, that the notice must be personally served upon the "occupant" of the premises so advertised for sale, negatives the idea that, under the statute, the mortgagee must secure possession before sale. We need not here determine whether or not the provision of section 9449, enacted as section 1 of Chapter 230 of the Laws of 1921, insuring an execution debtor who occupies the land as a home for himself and his family against dispossession during the period of redemption allowed by law, amends section 9495, or renders the possession provision of the mortgage void, as, by analogy, would be the holding in *First National Bank* v. *Bell S. & C. Min. Co.*, supra, as this action was instituted after the period of redemption in this case had expired. According to the affidavit of counsel for plaintiff on the opposition to the motion to open the default, it was from apprehension on this ground that the prior case was dismissed and this action commenced more than a year after the sale was made. The sale was not void for the reason that the mortgagee was not in possession at the time it was had.

On the contentions made under the heads (2) and (6): Section 9471, Revised Codes 1921, provides that "real estate sold under a power of sale * * * shall be advertised for sale at least thirty days before the date fixed for such sale, in a newspaper in the county," and if there is no such newspaper, then "by posting notices * * * and in addition to the said publication or posting * * * notices of such sale must be served personally * * * upon the occupant * * * and upon the mortgagor if within the state."

There is no merit in the contention that the notice was deficient in that no notices were posted, as the mortgagee complied with the alternative requirement of publication. Nor is

there any merit in the conclusion contained in the sixth charge that the notice was not properly served; the record made on the hearing shows conclusively that personal service was had on Mrs. Perrine, the "occupant" and the "mortgagor."

Whether or not the publication was sufficient presents the only difficult question for determination. The notice is jurisdictional, and, unless the requirements of the statute are met, any sale made is void. (*Fauntleroy* v. *Mardis,* 123 Miss. 353, 85 So. 96; see, also, *Charlebois* v. *Bourdon,* 6 Mont. 373, 12 Pac. 775; *Roche Valley Land Co.* v. *Barth,* 67 Mont. 353, 215 Pac. 654.)

If the provision of the statute had been that the notice must be published *for,* or *throughout,* or *during,* the period of thirty days next preceding the date fixed for the sale, undoubtedly a publication in the weekly paper for less than the five publication days immediately preceding the date of sale would render the sale void. (See *Smith* v. *Collis,* 42 Mont. 350, 112 Pac. 1070, Ann. Cas. 1912A, 1158; *Garry* v. *Martin,* 70 Mont. 587, 227 Pac. 573, 575.) However, in *Garry* v. *Martin,* this court quoted with approval the declaration that "in each case some word or phrase contained in the particular statute, or the character of the proceedings, leads the court to its particular conclusion." Following this line of thought, we said later: "Without questioning the correctness of the construction placed upon the statute under consideration in the *Garry Case,* we are of the opinion that the phraseology used in section 7168, above [providing the notice to be given in creating an irrigation district], does not warrant the inference of a like legislative intent nor compel a like interpretation." (*Scilley* v. *Red Lodge-Rosebud Irr. Dist.,* 83 Mont. 282, 272 Pac. 543, 551.)

The case of *First Nat. Bank* v. *Bell S. & C. Min. Co.,* supra, presented the question of the sufficiency of notice of sale under a power requiring "thirty days' notice of the time and place and terms of such sale, by publishing the same once a week for three weeks successively." Answering a contention similar to that here made, the court said that if the requirement

had been that "there should be first given 30 days' notice,
* * * the notice should be published each succeeding week,
for and including the fifth week," but held that "the first
publication is notice as much as the second or last," and that
the only purpose of the provision for publication "once a
week for three weeks" was "to define the extent of the
notice." The court then made this significant statement:
"The requirement is that notice shall be given 30 days before,
and inasmuch as the first publication is notice, then the re-
quirement is met if 30 days intervene between the time of the
first publication and the day of sale." This holding is tanta-
mount to a declaration that, had it not been for the clause
intended "to define the extent of the notice," a single publi-
cation, thirty days before the date fixed, would have sufficed.

Section 9471 merely declares that the property "be adver-
tised for sale at least thirty days before the date fixed for such
sale." To "advertise" means "to publish notice of; esp. by
printed notice." (Webster's New Int. Dictionary, 2d ed.)
"Advertisement" is "a notice published in hand bills or a
newspaper." (*Darst* v. *Doom,* 38 Ill. App. 397; *Edwards* v.
*Lubbock County,* (Tex. Civ. App.) 33 S. W. (2d) 482; *Nich-
ols* v. *Nichols,* 192 Ala. 206, 68 So. 186; *People* v. *McKean,* 76
Cal. App. 114, 243 Pac. 898.) No one would contend that the
statute, if it did not "define" the nature of the notice by
requiring that the advertisement be "in a newspaper," would
require more than one distribution of handbills; a single dis-
tribution would constitute "notice," and, as held in *First Nat.
Bank* v. *Bell S. & C. Min. Co.,* supra, one publication in a
newspaper constitutes notice.

Here the phraseology employed in the requirement that the
sale shall be advertised in a newspaper is the same as that
employed in declaring that personal notice shall be served on
the occupant of the premises and the mortgagor; each act must
be performed "at least thirty days before the date fixed for
such sale"; there is no logical reason for differentiation be-
tween the two—each act must be performed on a date which
is at least thirty days "before" the date fixed. "Before,"

when used, as here, as a preposition, does not indicate a period of time as do the prepositions "for," "during" and "throughout," considered in *Smith* v. *Collis*, and *Garry* v. *Martin*, heretofore cited, but merely an event or act "preceding in time; earlier than or previously to" the time mentioned. (See Webster's New Int. Dictionary, 2d ed.)

It is therefore manifest that the sale here challenged was "advertised * * * at least thirty days before the date fixed for such sale, in a newspaper in the county" in which the property is situated, and that the statute requires no more than this. The notice was therefore sufficient in this regard.

The third complaint is that the land was improperly described. The mere inclusion of additional property does not vitiate the sale as to the mortgagor, whose property was properly described in the notice; she was not adversely affected by a sale of more property than she had, rather the contrary. The true owner of the improperly included forty-acre tract, or the purchaser, might seek a revocation of the deed as to that tract, but the error does not entitle this mortgagor to have the sale set aside.

Nor does the fact that the property covered by the two mortgages executed at the same time was all included in the one sale affect the validity of the notice or sale, the parties being the same in the two mortgages. (*Wheeler* v. *McBlair*, 5 App. D. C. 375, affirmed 172 U. S. 643, 19 Sup. Ct. 882, 43 L. Ed. 1182; *Tyler* v. *Massachusetts Mut. Life Ins. Co.*, 108 Ill. 58; *Richardson* v. *Hedges*, 150 Ind. 53, 49 N. E. 822; *Mason* v. *Goodnow*, 41 Minn. 9, 42 N. W. 482.)

The last question raised is as to the necessity of filing a return of the sale. This question is not argued. The statute makes no provision for such a return. The statute on foreclosure proceedings (sec. 9467, Rev. Codes 1921) requires the entry of a deficiency judgment in case the sheriff's return shows that the proceeds of the sale are insufficient to pay the judgment, costs and the like; but in such a sale as this there is no judgment, and no deficiency judgment could possibly be entered. The mortgagor, having granted his creditor the right

to sell his property in satisfaction of the debt, is bound by his contract and can require no more of the mortgagee than his mortgage and the applicable statutes require. The sale was not void for failure to make a return of the sale.

It is therefore apparent that the showing made to the court on the motion to open the default did not make out a prima facie good defense to the complaint in ejectment, and, consequently, the court did not abuse its discretion in denying the motion.

Judgment affirmed.

ASSOCIATE JUSTICES STEWART, ANDERSON and MORRIS concur.

MR. CHIEF JUSTICE SANDS, being absent on account of illness, did not hear the argument, and takes no part in the foregoing decision.