DIVERSIFIED DEVELOPERS, INC.
et al., Appellants,

v.

TEXAS FIRST MORTGAGE REIT et
al., Appellees.

No. 8353.

Court of Civil Appeals of Texas,
Beaumont.

Nov. 15, 1979.

Rehearing Denied Dec. 6, 1979.

Stephen Lang, R. Michael Casseb, San Antonio, for appellants.

Keith E. Kaiser, San Antonio, Kenneth E. Johns, Jr., Houston, for appellees.

CLAYTON, Justice.

Appellants, Diversified Developers, Inc. (DDI) and Douglas L. Saunders, Sr., filed this suit against Texas First Mortgage Reit (TFMR) and Grayson P. Van Horn, appellees, seeking to set aside and declare invalid a trustee's sale of Elm Creek Property in San Antonio, Texas, such sale being held pursuant to the provisions of a deed of trust, an order of the Bankruptcy Court of the United States District Court for the Western District of Texas, San Antonio Division, and a settlement agreement entered into by the parties and approved by the Bankruptcy Court. TFMR counter-claimed for a declaratory judgment that the trustee's sale was valid and was effective to convey good and marketable title to the purchaser at the sale, and for a judgment against appellants for the difference between the true debt and the settlement debt because appellants violated the settlement agreement.

The trial court granted appellees' motion for instructed verdict and entered judgment that appellants take nothing against appellees, and that the trustee's sale was valid and conveyed good and marketable title to appellee, TFMR. TFMR non-suited its other claims for affirmative relief.

We will give a brief background leading up to this litigation and will give the relevant facts under our discussion of the various points of error. Elm Creek, Inc. (ECI), a subsidiary of DDI, was the initial developer of the real estate involved herein. In

order to acquire and develop this realty, ECI borrowed from and executed to TFMR on February 28, 1973, its promissory note in the amount of $6,000,000. Saunders, Sr., executed and delivered to TFMR his unconditional guaranty on the note. On the same day of the execution of the note, ECI and DDI executed a construction loan agreement. This agreement was additionally secured by a deed of trust and security agreement. Subsequent to the execution of these loan documents, TFMR advanced, under provisions of the note, and paid to or for the benefit of ECI $4,542,599.61. Subsequently, ECI transferred all its assets to DDI, and DDI assumed all ECI's liabilities.

On March 26, 1975, DDI filed a petition for an arrangement of its unsecured debts pursuant to Chapter XI of the Bankruptcy Act. On December 23, 1976, DDI and Saunders, Sr., filed suit against TFMR in the District Court of Bexar County for failure to fund under the loan documents. TFMR then initiated steps preparatory to foreclosure of its deed of trust lien by filing a complaint in the bankruptcy court. This litigation was compromised by a settlement agreement which provided for the entry of an order by the bankruptcy court and the entry of a final judgment by the State District Court.

Following these proceedings, TFMR began foreclosure proceedings under the deed of trust, and the trustee (actually the substitute trustee) sold the property to the only bidder for the sum of $2,578,840.17. It is undisputed the unpaid portion of the original $6,000,000 debt, at the time of the sale, was the amount bid at the sale.

Appellants attack the trustee's sale upon certain grounds of irregularities in the notice of sale, irregularities in the proceedings of the sale, and the "grossly inadequate consideration" paid at such sale.

■ Appellants, in their first point, urge error in granting the motion for instructed verdict "because the deed of trust sale was invalid due to the inclusion of unavailable acreage in the Substitute Trustee's sale notice."

The notice of the substitute trustee's sale, properly posted and sent to appellants, advertised for sale certain property contained in and described in the deed of trust. The described property included a certain 34.359 acre tract out of the Elm Creek property and three lots out of the described property which were not available for sale as represented. The 34.359 acre tract had been released by TFMR prior to the sale. The three lots had previously been released by TFMR and conveyed to third parties. It is appellants' contention that the trustee's sale is invalid because the notice and sale thereunder contained property which, prior to the sale, had been released and could not properly be subject to the sale and be included in the trustee's deed to the purchaser.

It is undisputed that the 34.359 acre tract was subject to TFMR's deed of trust when the notice was posted. On December 1, 1977, subsequent to the posting of the notice, DDI paid TFMR the agreed release price for the acreage and conveyed same to a third party. TFMR released its lien on this acreage.

At the time of the trustee's sale, no one was in attendance except Saunders, Jr., an attorney who was vice-president of DDI and was employed as in-house counsel, Schwarzback, managing agent of TFMR, Kaiser, an attorney for TFMR, and Van Horn, the trustee. Immediately preceding the sale, the trustee read the notice and announced the property described in the notice was being sold, save and except an additional 34.359 acre tract which had been released subsequent to the posting of the notice and prior to date of sale. The trustee then read the general description of the tracts which were advertised, saving and excepting the 34.359 acre tract. Saunders, Jr., testified there was no confusion in his mind as to the property being sold. He testified further that no person was denied the opportunity to bid at the foreclosure sale.

Following the reading of the notice, the trustee announced the property was open for bidding. Schwarzback bid the amount

of the settlement debt which, following the release of the 34.359 acre tract, amounted to $2,578,840.17. No other bids were made by any person present, and the trustee accepted the bid offered by Schwarzback on behalf of the mortgagee, TFMR. Saunders, Jr., testified he was not prepared to bid at the sale. The trustee's deed to the purchaser did not include the 34.359 acre tract. The record reflects that the purchaser did not intend to purchase the three lots, lots 17, 19, and 20, and a correction substitute trustee's deed was executed and recorded to the effect that the purchaser claimed no interest in lots 17, 19, and 20.

The question of the validity of a trustee's sale, when previously released acreage was wrongfully advertised for sale in the foreclosure notice, has not been addressed or determined by any Texas court. However, it has been expressly decided in other jurisdictions. *Crist v. House & Osmonson, Inc.*, 7 Cal.2d 556, 61 P.2d 758 (1936); *First National Corporation v. Perrine*, 99 Mont. 454, 43 P.2d 1073 (1935); *Baca v. Chavez*, 32 N.M. 210, 252 P. 987 (N.M.Sup.Ct.1927); *Bernstein v. Shain*, 263 Mass. 188, 160 N.E. 671 (1928); *Chace v. Morse*, 189 Mass. 559, 76 N.E. 142 (1905); and *Peoples Savings Bank v. Wunderlich*, 178 Mass. 453, 59 N.E. 1040 (1901).

In *Crist*, the trustee noticed and sold not only the mortgaged property but also property no longer owned by the mortgagor. The Supreme Court of California concluded, "The rule is therefore sufficiently well settled that in the absence of any evidence that actual prejudice was suffered, the misdescription by the inclusion of property theretofore released must be of such a substantial nature that prejudice is likely to result to the trustors. . . . Therefore, the [trial court] could have inferred that the effect of its actual inclusion in the advertized sale would normally have been to attract rather than deter bidders, and that the [foreclosure sale purchaser] was the only one who was likely to suffer prejudice thereby." To the same effect is *First National Corporation v. Perrine*, supra, and *Baca v. Chavez*, supra. We agree with the rationale of this line of cases and the rule enunciated therein.

The property description attached to the settlement agreement was approved by appellants, and no question concerning the unintentional inclusion of lots 17, 19, and 20 was raised by appellants even though such lots were included in the property description attached to the settlement agreement exactly as set forth in the notice.

The evidence clearly shows the mortgagor was present at the trustee's sale with knowledge of the previously released property, and had no interest in or claim to the released property. The sole bidder had no intention to purchase the released property, and the bid price was not affected by the inclusion of such released property. There is no evidence that any prospective bidder was prevented or deterred in any manner from bidding at the trustee's sale. There is no evidence of any prejudice or harm to the mortgagor resulting from the inclusion of the previously released property. Under these circumstances, we hold the inclusion of the 34.359 acre tract in the posted notice of sale and the inclusion of the three previously released lots in the sale did not invalidate the trustee's sale. This point is overruled.

■ Appellants further complain of error by the trial court in "requiring the appellants to prove a causal connection between the irregularities in the trustee's sale and the grossly inadequate consideration bid by appellee."

Testimony in the record reflects the appraisal value of the property was approximately $4,000,000, and the consideration paid by the bidder at the trustee's sale was the amount of the debt.

Mere inadequacy of consideration alone does not render a foreclosure sale void if the sale was legally and fairly made. *Tarrant Savings Association v. Lucky Homes, Inc.*, 390 S.W.2d 473 (Tex.1965). There must be evidence of irregularity, though slight, which irregularity must have been caused or contributed to cause the property to be sold for a grossly inadequate price. *American Savings and Loan Association v.*

*Musick,* 531 S.W.2d 581 (Tex.1975); *Packer v. First Texas Savings Association,* 567 S.W.2d 574 (Tex.Civ.App.—Eastland 1978, writ ref'd n. r. e.); *Purnell v. Follett,* 555 S.W.2d 761 (Tex.Civ.App.—Houston [14th Dist.] 1977, no writ). This point is overruled.

■ Appellants' sixth point urges error in granting the motion for instructed verdict because "appellants showed irregularities in the deed of trust sale which caused or contributed to cause a grossly inadequate consideration." We have carefully reviewed the record before us and find there is no evidence that any irregularity caused or contributed to cause the property to be sold for a grossly inadequate price. This point is overruled.

We have carefully considered all other points of error urged by appellants, and finding them without merit, they are overruled.

The judgment of the trial court is affirmed.

AFFIRMED.