# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

NO. 03-07-00240-CV

Myrad Properties, Inc., Appellant

v.

LaSalle Bank National Association, as Trustee for the Registered Holders of GMAC Commercial Mortgage Securities, Inc; Commercial Mortgage Pass-Through Certificates; Series 1997-C1; Robin Green; and Melissa Cobb, Appellees

FROM THE DISTRICT COURT OF BELL COUNTY, 169TH JUDICIAL DISTRICT
NO. 220061.C, HONORABLE RICK MORRIS, JUDGE PRESIDING

## O P I N I O N

This is an appeal from a final summary judgment on claims arising from the non-judicial foreclosure of two apartment complexes that had secured a single note under a single deed of trust. The central issue in this case, presented in cross-motions for summary judgment, concerns the legal effect of an error in the notice of foreclosure sale: a definition of the "property" to be sold that incorporated a legal description of only one of the apartment complexes that secured the note, but not the other. We affirm the portions of the district court's judgment predicated on its resolution of this legal issue. However, because fact issues preclude summary judgment as to a declaratory claim that the debtor is entitled to a surplus, we must reverse this portion of the judgment and remand it for further proceedings.

BACKGROUND

**Myrad's obligations and default**

The following summary is taken from the undisputed summary judgment evidence. In July 1997, the appellant, Myrad Properties, Inc., purchased two non-contiguous parcels of land in Killeen that each contained a multi-family apartment complex—La Casa Apartments and Casa Grande Apartments. The La Casa Apartment complex is the larger of the two, having 64 units, while Casa Grande has only 21 units. Myrad financed its purchase by executing a note in the amount of $1,050,000 payable to First Security Commercial Mortgage, L.P. (the Note). The Note was secured by a "Deed of Trust, Security Agreement, and Fixture Filing" (the Deed of Trust). The Deed of Trust covered "Property" defined to include, among other interests, the "Land"—"The real property described in Exhibit A-1 and A-2 attached hereto and made a part hereof." Exhibit A-1 is a metes and bounds description of the parcel on which the La Casa Apartments are located, while A-2 is a legal description of the Casa Grande parcel. The Deed of Trust further specified that the "Property" also included improvements, fixtures, personal property, and various other rights and interests related to the "Land." The Deed of Trust was recorded in the real property records of Bell County. In 1999, the Note and Deed of Trust were assigned to appellee LaSalle National Bank Association, as trustee for investors in a large pool of loans.[1] Since that time, LaSalle has been the mortgagee and holder of the Note.

---

[1] For simplicity, we will refer to this party simply as "LaSalle." We will also use "LaSalle" to refer to acts taken on its behalf by Capmark Finance, Inc., its mortgage servicer, except where the distinction between these entities becomes relevant.

The Note required Myrad to make monthly specified payments of principal and interest. If Myrad failed to make the required payments, the Note and Deed of Trust authorized LaSalle to assess late charges and to charge a higher default rate of interest until the default was cured. Other remedies included declaring the entire unpaid amount of the "Debt" immediately due and payable, which would include (1) the principal sum of the Note; (2) accrued interest, default interest, late charges, prepayment consideration, and "other sums" as provided in the Note, Deed of Trust, or other security documents; (3) "all other moneys agreed or provided to be paid" by the Note, Deed of Trust, or other security documents; (4) "all sums advanced" pursuant to the Deed of Trust "to protect and preserve the Property and the lien and security interest created thereunder"; and (5) "all sums advanced and costs and expenses incurred" by LaSalle "in connection with the Debt or any part thereof, any renewal, extension, or change of or substitution for the Debt or any part thereof, or the acquisition or perfection of the security therefore, whether made or incurred at the request of [Myrad] or [LaSalle]."

Under the Deed of Trust, Myrad also agreed that LaSalle would have the right to sell the "Property" through non-judicial foreclosure:

> sell for cash or upon credit the Property or any part thereof and all estate, claim, demand, right, title and interest of Grantor therein and rights of redemption thereof, pursuant to power of sale or otherwise, at one or more sales, as an entity or in parcels, at such time and place, upon such terms and after such notice thereof as may be required or permitted by law as follows. The Trustee, his successor or substitute, is authorized and empowered and it shall be his special duty at the request of the Beneficiary to sell the Property or any part thereof . . . at the courthouse of any county in the State of Texas in which any part of the Property is situated, at public venue to the highest bidder for cash between the hours of 10 o'clock a.m. and 4 o'clock p.m. the first Tuesday in any month after having given notice of such sale in accordance with the statutes of the State of Texas then in force governing sales of real estate under powers conferred by a Deed of Trust. . . .

3

Myrad subsequently defaulted on its payment obligations. On August 3, 2006, LaSalle, through its attorney, appellee Robin Green, issued to Myrad a notice of default, demand for immediate cure and notice of intent to accelerate the indebtedness due under the note. This document also referenced the correct book, page number and date of the recorded Deed of Trust, "covering the real and personal property more particularly described therein and commonly known as Casa Grande and LaCasa Apartments," and noting the street addresses of each apartment complex. Myrad admitted that it received this notice of default and was aware that it referenced both parcels.

On August 29, 2006, LaSalle, through Green, issued to Myrad a notice of acceleration of the indebtedness due under the note. As with the notice of default, this document referenced the correct book, page number and date of the recorded Deed of Trust and the names and street addresses of "Casa Grande and LaCasa Apartments." Myrad admitted receiving this document and was aware that it referenced both parcels.

On October 16, 2006, LaSalle filed, in the Bell County real property records, its Appointment of Substitute Trustees and Notice of Substitute Trustee's Sale for Tuesday, November 7, between the hours of 10:00 a.m. and 4:00 p.m, at the Bell County Courthouse. *See* Tex. Prop. Code Ann. § 51.002(a) (West 2007) ("A sale of real property under a power of sale conferred by a deed of trust . . . must be a public sale at auction held between 10:00 a.m. and 4 p.m. on the first Tuesday of a month. . . . [T]he sale must take place at the county courthouse in the county where the land is located."). LaSalle also served Myrad with a copy of each document via certified mail and posted copies on the bulletin board outside the Bell County Clerk's office. *See id.* § 51.002(b)

4

(requiring 21 days' notice of sale by posting "at the courthouse door," filing with the county clerk, and service on each debtor).

Because the contents and legal effect of the Notice of Substitute Trustee's Sale are at the center of the parties' dispute, we quote it at length:

**NOTICE OF SUBSTITUTE TRUSTEE'S SALE**

| | |
|---|---|
| **STATE OF TEXAS** | § |
| | § |
| **COUNTY OF BELL** | § |

Date:                            October 6, 2006

Borrower:                     Myrad Properties, Inc., a Texas Corporation

Borrower's Address:         . . . .

Holder:                      La Salle National Bank Association, as Trustees for the Registered Holders of GMAC Commercial Mortgage Securities, Inc., Commercial Mortgage Pass-Through Certificates, Series 1997-C1

Holder's Address:           . . .

Mortgage Servicer:          Capmark Finance, Inc.

Mortgage Servicer's Address:    . . .

Substitute Trustees:         Robin Green, Melissa Cobb, Janice Wright, Kenneth Strickland, Juanita Strickland, and Gloria Tanguay or any of them acting alone[2]

---

[2] Green and Cobb, both appellees, are attorneys with Powell Goldstein; Wright is a legal assistant at the firm. The Stricklands and Tanguay were names provided by the service that Powell Goldstein or Capmark retained to perform the deed of trust sale.

| | |
|---|---|
| Substitute Trustees' Address: | Powell Goldstein LLP<br>. . . . |
| Deed of Trust: | Deed of Trust, Security Agreement, and Fixture Filing |
| Date: | July 16, 1997 |
| Grantor: | Myrad Properties, Inc., a Texas Corporation |
| Lender: | First Security Commercial Mortgage, L.P., a Delaware limited partnership |
| Trustee: | William Bradshaw |
| Secures: | Promissory Note ("Note") dated July 16, 1997, in the original principal amount of $1,050,000 executed by Grantor, payable to the order of Lender and currently held by Holder. |
| Recording: | Recorded July 16, 1997 in the Real Estate Records of Bell County, Texas (the "Records") in Volume 3645, Page 300. |
| Property: | The real property described on Exhibit A attached hereto and made a part hereof for all purposes, together with all improvements and personal property described in the Deed of Trust. |

The "Exhibit A" attached to the notice and incorporated into the definition of "Property" is a metes and bounds description of the Casa Grande parcel only. It is undisputed that "Property" was supposed to include all collateral for the note and that the legal description of the La Casa parcel was omitted from Exhibit A in error.

The Notice of Substitute Trustee's Sale then states:

6

Holder, acting by and through Mortgage Services, has appointed Robin Green, Melissa Cobb, Janice Wright, Kenneth Strickland, Juanita Strickland, and Gloria Tanguay, and each of them acting alone, as Substitute Trustees under the Deed of Trust upon the contingency and in the manner outlined in the Deed of Trust and in accordance with Chapter 51 of the Texas Property Code. Default has occurred pursuant to the provisions of the Deed of Trust. The indebtedness evidence by the Note is now wholly due. Holder, acting by and through Mortgage Servicer, has instructed Substitute Trustees, and each of them acting alone, to sell the Property toward the satisfaction of the Note.

The Deed of Trust may encumber both real and personal property. Notice is hereby given of Holder's election to proceed against and sell both the real property and any personal property described in the Deed of Trust in accordance with the Holder's rights and remedies under the Deed of Trust and Section 9.604 of the Texas Business and Commerce Code.

Notice is hereby given that on the Date of Sale, Substitute Trustees, or any one of them acting alone, will offer the Property for sale at public auction at the Place of Sale, to the highest bidder for cash, "AS IS". THERE WILL BE NO WARRANTY RELATING TO TITLE, POSSESSION OR QUIET ENJOYMENT OR THE LIKE FOR THE PERSONAL PROPERTY INCLUDED IN THE SALE. Holder may bid by credit against the indebtedness secured by the Deed of Trust.

The notice was signed by Cobb.

On November 2, Myrad's bankruptcy counsel sent a letter to Cobb addressing various issues related to the foreclosure. The letter referenced "Property: Casa Grande and La Casa Apartments," and began, "With your foreclosure on the above-referenced real estate set next Tuesday . . . ."

On November 7, Strickland conducted the substitute trustee's sale on the Bell County Courthouse steps. Strickland recited the book and page number of the Deed of Trust, stated that he was selling "[t]he real property described in the Deed of Trust and more particularly described as follows," and then read the legal description of the Casa Grande but not the La Casa parcel. He then

7

conducted the sale. Strickland, on behalf of LaSalle, made a credit bid $978,000, an amount that LaSalle had calculated based on the estimated amount of Myrad's debt as of the date of foreclosure. It is undisputed that LaSalle was seeking to have sold and to purchase all of the properties securing the note under the Deed of Trust—both the Casa Grande and La Casa Apartments.

LaSalle's credit bid was the sole bid at the sale. La Salle was issued a Substitute Trustee's Deed, similar in form to the Notice of Substitute Trustee's Sale, that purported to convey to it the "Property," again defined as "[t]he real property described on Exhibit A attached hereto and made a part hereof for all purposes, together with all improvements and personal property described in the Deed of Trust." As with the Notice of Substitute Trustee's Sale, Exhibit A to the Substitute Trustee's Deed contained only a legal description of the Casa Grande parcel. This deed was recorded on the same day.

**Correction deed and underlying proceedings**

In the aftermath of the substitute trustee's sale, Myrad asserted the view that the Substitute Trustee's Sale and deed had conveyed only the Casa Grande Apartments to LaSalle and not the La Casa Apartments. On November 9, Myrad sued LaSalle, Green and Cobb seeking declarations under the Uniform Declaratory Judgments Act[3] that the substitute trustee's sale "did not act to convey any part of the La Casa Apartments"; that the sale (so viewed) "was a valid sale not subject to being set aside or otherwise collaterally attacked"; that by virtue of the sale, applying the sale price to Myrad's indebtedness results in the Deed of Trust being satisfied and extinguished; that

---

[3] *See* Tex. Civ. Prac. & Rem. Code Ann. § 37.001-.011 (West 1997 & Supp. 2007).

applying the sale price to Myrad's indebtedness results in a surplus due and owing to Myrad; and that "LaSalle no longer has any legal or equitable interest in the La Casa Apartments." Myrad also sought injunctive relief to bar the appellees from filing any reformed or corrected deed purporting to assert any legal or equitable interest in the La Casa Apartments or otherwise interfering with its rights in the complex.

Myrad obtained a temporary restraining order but, on November 22, following an evidentiary hearing that is part of the summary-judgment record, the district court dissolved the TRO and denied Myrad's application for temporary injunction. On the same day, LaSalle filed a "Correction Substitute Deed." The Correction Substitute Deed was materially identical to the original Substitute Trustee's Deed except that it attached an "Exhibit A" that tracked the definition of "Property" from the Deed of Trust. That definition, again, explicitly encompassed both the Casa Grande and La Casa parcels, as well as improvements, fixtures, personal property, and various other rights and interests related to each parcel.

Thereafter, Myrad amended its petition to add claims for declarations that the "'Correction Substitute Deed' is invalid or void and/or unenforceable" and that it is the owner of the La Casa Apartments. It also asserted a quiet title claim to set aside the Correction Substitute Deed, as well as claims for damages from Cobb's "breach of duty" as substitute trustee and conspiracy to do the same.[4]

---

[4] Myrad also asserted its breach-of-duty and conspiracy claims against Strickland, but subsequently non-suited these claims against him.

The appellees counterclaimed for declarations that (1) the Substitute Trustee may file a corrective deed to include foreclosure of the La Casa Apartments; (2) the foreclosure sale was proper in all respects and had the effect of foreclosing Myrad's interests in both the Casa Grande Apartments and the La Casa Apartments; and (3) the Substitute Trustee's sale did not result in the Deed of Trust being satisfied and extinguished. In the event the court found the foreclosure sale was not properly conducted, LaSalle pled in the alternative for a declaration that it maintained all legal and equitable interests it was granted by the Deed of Trust and is entitled to re-conduct the foreclosure sale under Texas law. LaSalle also asserted counterclaims for reformation of the Substitute Trustee's Deed to include the La Casa Apartments, that the Substitute Trustees be authorized to rescind the Substitute Trustee's sale and conduct another sale, and that a receiver be appointed to manage the complexes pending resolution of its declaratory claims.

**Summary-judgment motions**

The parties subsequently filed cross-motions for summary judgment. The appellees sought summary judgment, on both traditional and no-evidence grounds, on each of Myrad's claims. They also sought summary judgment on their counterclaims for declarations that the substitute trustee was authorized to file the correction deed, the foreclosure sale was sufficient to foreclose Myrad's interest in both the Casa Grande and La Casa Apartments, and that the substitute trustee's sale did not extinguish or satisfy the Deed of Trust. In the alternative, the appellees moved for summary judgment on their declaratory claim that if the sale was improperly conducted, LaSalle

maintained all legal and equitable interest in both the Casa Grande and La Casa Apartments under the Deed of Trust and may rescind the sale and re-conduct the foreclosure.

Myrad sought summary judgment on claims for declarations that the Substitute Trustee's sale did not convey the La Casa Apartments, that this sale (so viewed) was valid and not subject to being set aside, and that the correction deed was invalid. It also sought summary judgment that "by virtue of the Substitute Trustee's Sale dated November 7, 2006, Myrad is entitled to a credit of $978,000," an element of its declaratory claim that the sale resulted in a surplus. Myrad also sought summary judgment, on both traditional and no-evidence grounds, on the appellees' claims for reformation of the Substitute Trustee's Deed or rescission of the substitute trustee's sale.

Following a hearing, the district court granted the appellees' summary-judgment motion "except for rescission" and denied Myrad's motion in its entirety. It rendered final judgment declaring that the substitute trustee's sale had conveyed to LaSalle title to both the La Casa and Casa Grande Apartments, that the correction deed had vested title in LaSalle to the property described therein, and that Myrad should take nothing on its claims. Myrad appeals.

**ANALYSIS**

In three issues on appeal, Myrad asserts that the district court erred in granting the appellees' summary-judgment motion and in denying its motion. Myrad's primary complaint is that the district court erred in granting summary judgment on the appellees' declaratory claims that the November 7, 2006 substitute trustee's sale had conveyed both the Casa Grande and La Casa Apartments and that the correction deed had vested title to both parcels in LaSalle. Relatedly, Myrad complains that the district court erred in denying summary judgment on Myrad's declaratory claims

11

regarding the same issues, granting LaSalle's motion against those claims, and in granting summary judgment against Myrad's quiet title claim.

The cornerstone of Myrad's arguments is its contention that the foreclosure sale had the legal effect of conveying only the Casa Grande Apartments due to the erroneous property description incorporated into the Notice of Substitute Trustee's Sale and read by Strickland at the sale. So viewed, this transaction, Myrad adds, was accurately memorialized in the Substitute Trustee's Deed. Consequently, Myrad maintains, the correction deed was invalid and unenforceable because it purported to convey an entirely new estate rather than merely correcting a scrivener's error in the original deed. *See Halbert v. Green*, 293 S.W.2d 848, 851 (Tex. 1956).

Myrad's premise regarding the legal effect of the foreclosure sale is also the foundation for the dissent's portrayal of the issues presented[5] and its assertions that LaSalle garnered a "windfall" from the sale[6] and unilaterally effected a separate conveyance merely by filing a correction deed.[7]

---

[5] *See Myrad Properties, Inc. v. LaSalle Bank, No.* 03-07-00240-CV, ___S.W.3d ___, ___ n.12 (Tex. App.—Austin Jan. 25, 2008, no pet. h) (Patterson, J., dissenting) (asserting that "this case poses the questions whether (i) a lender, by referencing a deed of trust in the notice [of foreclosure sale], automatically expands the property subject to the sale . . . to include all of the property contained in the deed of trust" without regard to the contents of the notice and authorizes the trustee "to unilaterally file a correction deed after the fact to enlarge the property subject to the sale").

[6] *See id.* at ___ n.9 ("Appellees have been granted a windfall and complete reprieve from their admitted failure to strictly comply with statutory notice requirements."), ___ (purporting "fidelity to the statutory requirements of non-judicial foreclosure").

[7] *See id.* at ___ (accusing us of "render[ing] the Property description actually contained in the Notice meaningless"), ___ (urging that "a party unilaterally could file a correction deed to vest title in a separate piece of property regardless of whether the notice and sale as to the separate property complied with public notice requirements, a result that would circumvent and eliminate the statutory requirements"), ___ ("I would hold that a party cannot unilaterally file a correction deed

12

Myrad also contends that fact issues precluded the district court from granting summary judgment against its declaratory claim that the sale yielded a surplus and its claims that Cobb breached her duties as a substitute trustee and engaged in a conspiracy to do so.

**Standard of review**

We review the district court's summary judgment de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). To prevail on a traditional motion for summary judgment, the moving party must prove that "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law on the issues expressly set out in the motion." Tex. R. Civ. P. 166a(c); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex. 1985). If the movant's motion and summary-judgment evidence establish its right to judgment as a matter of law, the burden shifts to the nonmovant to defeat summary judgment. The nonmovant then has the burden to respond to the motion and to present to the trial court any issues that would preclude summary judgment. *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex. 1979). Summary judgment is appropriate only when there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. *Nixon*, 690 S.W.2d at 548. In deciding whether there exists a disputed fact issue precluding summary judgment, we treat evidence favorable to the nonmovant as true, and we must resolve every doubt and indulge all reasonable inferences in the nonmovant's favor. *Id*. at 548-49.

---

to vest title in a separate piece of property that was not noticed in compliance with statutory requirements or specifically included in a non-judicial foreclosure sale.").

A no-evidence motion for summary judgment must be granted if, after an adequate time for discovery, (1) the moving party asserts that there is no evidence of one or more essential elements of a claim or defense on which an adverse party would have the burden of proof at trial, and (2) the nonmovant fails to produce more than a scintilla of summary-judgment evidence raising a genuine issue of material fact on those elements. Tex. R. Civ. P. 166a(i). A no-evidence summary judgment is essentially a directed verdict granted before trial, to which we apply a legal-sufficiency standard of review. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 750-51 (Tex. 2003); *Perdue v. Patten Corp.*, 142 S.W.3d 596, 603 (Tex. App.—Austin 2004, no pet.). A no-evidence summary judgment will be sustained when: (1) there is a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a scintilla; or (4) the evidence conclusively establishes the opposite of a vital fact. *King Ranch*, 118 S.W.3d at 751. We view the evidence in the light most favorable to the nonmovant, disregarding all contrary evidence and inferences. *Id*. (citing *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997)). More than a scintilla of supporting evidence exists if the evidence would allow reasonable and fair-minded people to differ in their conclusions. *Id*. "Less than a scintilla of evidence exists when the evidence is 'so weak as to do no more than create a mere surmise or suspicion' of a fact." *Id*. (quoting *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex. 1983)).

When, as here, both parties move for summary judgment on overlapping legal issues and the district court grants one motion and denies the other, we review the summary-judgment evidence presented by both sides, determine all questions presented, and render the judgment that

14

the district court should have rendered. *Texas Workers' Comp. Comm'n v. Patient Advocates of Tex.*, 136 S.W.3d 643, 648 (Tex. 2004).

The district court granted appellees' summary-judgment motion on two of their declaratory claims, rendering judgment declaring that the substitute trustee's sale had conveyed to LaSalle title to both the La Casa and Casa Grande Apartments and that the correction deed had vested title in LaSalle to both complexes. Because the appellees had the burden of proof on these claims, it had the summary-judgment burden of negating any genuine issue of material fact and establishing that it is entitled to judgment on these claims as a matter of law. *See MMP, Ltd. v. Jones*, 710 S.W.2d 59, 60 (Tex. 1996). As for the claims on which Myrad had the burden of proof, because the appellees asserted both traditional and no-evidence summary-judgment grounds, they are entitled to judgment as a matter of law if either (1) the record contains no more than a scintilla of summary-judgment evidence raising a genuine issue of material fact on one or more essential elements of Myrad's claims, *see Forbes Inc. v. Granada Biosciences, Inc.*, 124 S.W.3d 167, 172 (Tex. 2003), or (2) the summary judgment evidence disproves, as a matter of law, one of the essential elements of each of Myrad's claims. *See Little v. Texas Dep't of Crim. Justice*, 148 S.W.3d 374, 381 (Tex. 2004).

**Effect and validity of substitute trustee's sale and correction deed**

We first address Myrad's contentions regarding the legal effect of the substitute trustee's sale and validity of the subsequent correction deed. The parties concur that our resolution of these issues turns on questions of law rather than disputed facts. We observe again that both

LaSalle and Myrad sought summary judgment regarding these issues. Further, Myrad prays on appeal that we render judgment on its summary-judgment motion regarding these issues.

Although the summary-judgment evidence is undisputed that Myrad had actual notice that LaSalle was seeking to foreclose its lien on both the Casa Grande and La Casa Apartments,[8] we agree with Myrad and the dissent that the Deed of Trust and section 51.002 of the property code required LaSalle to provide 21-day's prior notice of the foreclosure sale to both Myrad *and the public*. "The statutory notice provisions of section 51.002 seek to not only protect the debtor by affording him a lengthy notice period in which he may cure, but also adequately inform the third party public in order to maximize the likelihood of a profitable public sale at market value in which the debtor may recover his equity in his property." *Jasper Fed. Sav. & Loan Ass'n v. Reddell*, 730 S.W.2d 672, 674-75 (Tex. 1987). Because a trustee's power to sell the property is derived from the deed of trust and statute, strict compliance with these requirements is considered a prerequisite to the trustee's right to make the sale. *See Houston First Am. Sav. v. Musick*, 650 S.W.2d 764, 768 (Tex. 1983); *Childs v. Hill*, 49 S.W. 652, 653-53 (Tex. Civ. App.—Dallas 1898, no writ); *Texas Sav. & Loan Assoc. v. Seitzler*, 34 S.W. 348, 349 (Tex. Civ. App.—Austin 1896, writ ref'd). In other words, noncompliance with these requirements can render a foreclosure sale void. *See id.*

---

[8] In addition to receiving notices of acceleration and default that referenced both complexes, Myrad's bankruptcy counsel sent the November 2 letter to Cobb referencing "Property: Casa Grande and La Casa Apartments" and acknowledging, "With your foreclosure on *the above-referenced real estate* set next Tuesday, . . . ." (Emphasis added). On appeal, Myrad questions whether this letter "is a clear indication that it was a statement made after an analysis of the notice of sale." Although Myrad is disputing that its counsel conceded the appellee's interpretation of the Notice of Substitute Trustee's Sale, it does not appear to contest that it had actual notice that LaSalle was seeking to foreclose Myrad's interests in both apartment complexes.

16

The notice of the foreclosure sale must provide a description or other identification of the property to be sold. *See id.* Myrad's arguments are premised on the view that the substitute trustee's sale was invalid as a conveyance of both the Casa Grande and La Casa Apartments because the Notice of Substitute Trustee's Sale gave no notice complying with the Deed of Trust and section 51.002 that the La Casa Apartments would be sold. Myrad emphasizes that the Notice of Substitute Trustee's Sale defined "Property" as "the real property described on Exhibit A attached hereto and made a part hereof for all purposes, together with all improvements and personal property described in the Deed of Trust," and that Exhibit A included a legal description only of the Casa Grande parcel. This "Property," Myrad further points out, is the object of the notice's subsequent operative statements that "Holder . . . has instructed Substitute Trustees . . . to sell the *Property* toward the satisfaction of the Note," and that "Notice is hereby given that on the Date of Sale, Substitute Trustees . . . will offer the *Property* for sale at public auction at the Place of Sale, to the highest bidder for cash." *Cf. Williams v. J. & C. Royalty Co.*, 254 S.W.2d 178, 180 (Tex. Civ. App.—San Antonio 1952, writ ref'd) (discussing use of defined terms in contracts).

But, as the appellees observe, the Notice of Substitute Trustee's Sale also included the following statement:

> The Deed of Trust may encumber both real and personal property. Notice is hereby given of Holder's election to proceed against and sell both *the real property* and any personal property *described in the Deed of Trust* in accordance with the Holder's rights and remedies under the Deed of Trust and Section 9.604 of the Texas Business and Commerce Code.

17

(Emphasis added). Myrad insists that a reasonable person would understand this language to be an election of remedies under section 9.604 that provides no information regarding what real or personal property would be sold.[9] We disagree. These statements unequivocally notify the reader that LaSalle would be proceeding against and selling *the* real property and any personal property *described in the Deed of Trust*. The real and personal property described in the Deed of Trust included both the Casa Grande and La Casa parcels, and any improvements, fixtures, personal property, and various other rights and interests related to them. Other portions of the Notice of Substitute Trustee's Sale provide detailed information regarding the Deed of Trust, including where it was recorded. These components of the Notice of Substitute Trustee's Sale provide notice sufficient under the Deed of Trust and section 51.002 that both the Casa Grande and La Casa Apartments would be sold. *See Miller v. Gibralter Sav. & Bldg. Ass'n*, 132 S.W.2d 606, 608 (Tex. Civ. App.—Beaumont 1939, writ dism'd judgm't cor.) (reference in notice to recording date of the deed of trust is sufficient because it provides prospective bidders with "means of complete information").

Myrad insists that any reader put on inquiry notice by the notice's cross-references to the Deed of Trust would review that instrument and ascertain that it permits LaSalle to "sell for cash or upon credit the Property [defined therein as both apartments complexes] *or any part thereof* . . . at one or more sales, *as an entity or in parcels*." (Emphasis added). From this, Myrad suggests,

---

[9] Section 9.604 of the business & commerce code provides that where a security agreement covers both personal and real property, a secured party may proceed either under the U.C.C. as to the personal property alone or against both in accordance with its rights with respect to the real property. *See* Tex. Bus. & Com. Code Ann. § 9.604 (West 2002).

a reasonable person would conclude that LaSalle was foreclosing on only the Casa Grande Apartments.[10] However, the fact that LaSalle had the *right* to partially foreclose that Property—or to foreclose on all of that Property, for that matter—would imply nothing about which of these remedies it had elected. That information would instead come from the notice itself, which advised the reader that LaSalle would sell the real property and any personal property described in the Deed of Trust.

The problem with the Notice of Substitute Trustee's Sale, in other words, is not the absence of *any* notice that both the Casa Grande and La Casa Apartments would be sold, but that the notice is internally inconsistent regarding what property would be sold. Texas courts have not regarded similar inconsistencies in foreclosure sale property descriptions to be fatal. *See Mercer v. Bloodworth*, 715 S.W.2d 693 (Tex. App.—Houston [1st Dist.] 1986, writ ref'd n.r.e.). *Mercer* involved a trespass-to-try-title action in which a party's title claim rested upon the validity of a foreclosure sale. The notice of trustee's sale had "identified a different date of the deed of trust and

---

[10] In support of these contentions and others, Myrad places great emphasis on "expert opinions" in an affidavit it obtained from a real estate attorney. This testimony includes the attorney's opinions regarding the proper interpretation and legal effect of the Notice of Substitute Trustee's Sale and other instruments. Such opinions have no probative value and can neither support nor defeat summary judgment. *Cf. Akin v. Santa Clara Land Co.*, 34 S.W.3d 334, 339 (Tex. App.—San Antonio 2000, pet. denied) (holding that expert testimony offered to interpret the terms of a lease agreement was properly excluded because its construction or interpretation presented a question of law for the court); *Pegasus Energy Group, Inc. v. Cheyenne Petroleum Co.*, 3 S.W.3d 112, 134 (Tex. App.—Corpus Christi 1999, pet. denied) (holding expert testimony giving legal conclusions concerning interpretation of contract had no probative value and was properly excluded). Although LaSalle did not object to this affidavit below, failure to object or obtain a ruling on a substantively defective summary-judgment affidavit does not waive the substantive defect. *See Paragon Gen. Contractors, Inc. v. Larco Constr., Inc.*, 227 S.W.3d 876, 884 (Tex. App.—Dallas 2007, no pet.). However, we have considered the arguments asserted in the affidavit as an extension of Myrad's briefing.

19

an incorrect recording reference," but included a correct metes and bounds description of the property and also correctly named the trustee. The court held that the error and inconsistency in the notice did not render the sale invalid. In relevant part, it reasoned that "[a]nyone interested in bidding at the sale could readily have contacted the trustee to clear up any confusion that may have been created by the notice." *Id*. The Notice of Substitute Trustee's Sale here presents merely the converse: it provides an *inaccurate* metes and bounds description of the property to be sold but a *correct* citation to the deed of trust, identifies the Substitute Trustees, and provides detailed contact information. As in *Mercer*, the notice here enabled prospective bidders to readily contact the substitute trustees to "clear up any confusion that may have been created by the notice." We conclude that the erroneous and inconsistent property description in the Notice of Substitute Trustee's Sale does not constitute a failure to comply with the requirements of section 51.002 and the Deed of Trust with respect to the foreclosure sale of the La Casa Apartments.

A foreclosure sale may also be rendered invalid based on affirmative acts by the mortgagee that deter or "chill" bidding and adversely affect the sale price. *See Pentad Joint Venture v. First Nat'l Bank of LaGrange*, 797 S.W.2d 92, 95-96 (Tex. App.—Austin 1990, writ denied). Myrad appears to assert such a theory, contending that erroneous property description would have confused or deterred any prospective bidders interested in purchasing both the Casa Grande and La Casa Apartments. At least one court has held that, under Texas law, a similar under-inclusion of property in a notice of foreclosure sale could be actionable under such a theory. *See Resolution Trust Corp. v. Summers & Miller Gleneagles Jt. Venture*, 791 F. Supp. 653, 654-55 (N.D. Tex. 1992) (Texas law). That case involved a deficiency claim in which the debtor, in defense, challenged the

validity of the foreclosure sale. The notice of foreclosure had erroneously transposed the legal descriptions of two properties that were to be foreclosed in a manner that resulted in "an offer of more land for sale than was actually the case as to one tract, and an offer of less land for sale than was actually the case as to the other tract." In the court's view, there was "no question that an irregularity in the foreclosure process occurred." *Id.* at 654-55.

We conclude that the inconsistent property description incorporated into the Notice of Substitute Trustee's Sale is the sort of irregularity in the foreclosure process that could potentially have some propensity to confuse or deter potential bidders interested in purchasing both the Casa Grande and La Casa Apartments. Cobb, in fact, admitted during her deposition that the property description was "potentially" misleading. For the substitute trustee's sale of both the Casa Grande and La Casa Apartments to be invalid under a "chilled bidding" theory, however, Myrad also had the burden of proving that (1) the price or consideration received in the sale was grossly inadequate, and (2) such inadequacy was caused by the complained-of irregularity. *Id.* at 655; *see also American Sav. & Loan Assoc. of Houston v. Musick*, 531 S.W.2d 581, 587 (Tex. 1975).[11] Perhaps limited by its theory that the substitute trustee's sale conveyed only the Casa Grande Apartments, Myrad does not contend that there is any evidence that the Casa Grande and La Casa Apartments were sold for a grossly inadequate price.[12] Nor does Myrad present a fact issue that any potential bidders were

---

[11] *Cf. Charter Nat'l Bank–Houston v. Stevens*, 781 S.W.2d 368, 371-74 (Tex. App.—Houston [14th Dist.] 1989, writ denied) (contrasting this general rule with exception applicable where mortgagee deliberately chilled bidding and injured mortgagor seeks damages rather than to set aside the sale).

[12] Nor would the price LaSalle paid at the sale—$975,000, bid as a credit against Myrad's outstanding debt—be grossly inadequate. La Salle's appraiser testified that the Casa Grande and La Casa Apartments were collectively worth between $1,170,000 and $1,180,000. However, in his

actually deterred by the erroneous property description. The sole competent evidence that Myrad cites regarding the effect of the error is Strickland's deposition testimony that on the date of sale, he had gone to the Bell County Courthouse to sell more than one property, that there were persons present bidding on other sales he had conducted there, that there were persons present at the sale of the Myrad property that were potential bidders, and that no one other than LaSalle bid on the property.[13] This evidence falls short of supporting the inference that the other "potential bidders" were actually deterred from bidding by the erroneous property description. *See Summers & Miller Gleneagles Jt. Venture*, 791 F. Supp. at 655; *see also Diversified Developers, Inc. v. Texas First Mort. Reit*, 592 S.W.2d 43, 45-46 (Tex. Civ. App.—Beaumont 1979, writ ref'd n.r.e.) (similarly upholding directed verdict against claim to invalidate foreclosure sale on basis that previously-released property had been erroneously included in foreclosure notice; finding no evidence that erroneous property description had caused a grossly inadequate price or that any prospective bidder was prevented or deterred from bidding at the trustee's sale); *City of Keller v. Wilson*, 168 S.W.3d 802, 813 (Tex. 2005) ("when the circumstances are equally consistent with either of two facts, neither fact may be inferred"); *Schlumberger Well Surveying Corp. v. Nortex Oil & Gas Corp.*,

---

November 2, 2006 letter, Myrad's bankruptcy counsel represented that an appraiser "has valued the properties at almost double what your client(s) has asserted is owed." Accepting this statement as true, the sale price here is still proportionately much greater than those held not to be grossly inadequate in cases involving similar errors in property descriptions. *See Diversified Developers, Inc. v. Texas First Mort. Reit*, 592 S.W.2d 43, 45-46 (Tex. Civ. App.—Beaumont 1979, writ ref'd n.r.e.) (overruling contention that consideration was grossly inadequate where appraised value of property was $4 million and sale price was $2.5 million, the outstanding amount of the original $6 million debt).

[13] This is the sole evidence in the summary-judgment record that there were "potential bidders" or that "third parties attended the foreclosure sale." *See* ___ S.W.3d at ___, ___ n.14 (Patterson, J., dissenting).

22

435 S.W.2d 854, 858 (Tex. 1968) (noting that "a vital fact may not be established by piling inference upon inference").[14]

We hold that the appellees established, as a matter of law, that the Notice of Substitute Trustee's Sale gave legally sufficient notice that both the Casa Grande and La Casa Apartments would be sold at the foreclosure sale and that the appellees conclusively negated any fact issue as to whether any irregularity rendered that sale invalid. We similarly hold that the appellees met their burden regarding the substitute trustee's sale itself. The summary-judgment evidence is undisputed that Strickland announced that he would be selling "[t]he real property described in the Deed of Trust and more particularly described as follows," then read the legal description of the Casa Grande but not La Casa parcel. This notice parallels that given in the Notice of Substitute Trustee's Sale.

We accordingly hold that the district court did not err in granting summary judgment on the appellees' declaratory claim that the substitute trustee's sale had conveyed to LaSalle title to both the La Casa and Casa Grande apartments.[15] It is undisputed that the original Substitute Trustee's Deed did not accurately reflect that conveyance. Consequently, the district court did not err in granting summary judgment on appellees's declaratory claim that the correction deed vested

---

[14] These principles are dispositive of whatever implications the dissent draws from Myrad's claims of equity in the property. *See id.* at ___ n.9.

[15] We express no opinion regarding whether, if the foreclosure sale had been invalid as a conveyance of both the Casa Grande and La Casa Apartments, it would nonetheless have the legal effect of conveying only the Casa Grande Apartments, as Myrad contends, or would have rendered the entire sale invalid. *See Shearer v. Allied Live Oak Bank*, 758 S.W.2d 940, 942 (Tex. App.—Corpus Christi 1988, writ denied) ("Because the foreclosure sale was void, th[e] debt is revived and considered outstanding.").

title to both parcels in LaSalle. *See Adams v. First Nat'l Bank of Bells/Savoy*, 154 S.W.3d 859, 871 (Tex. App.—Dallas 2005, no pet.). Summary judgment was likewise appropriate on Myrad's overlapping declaratory claims and its quiet title action. As noted, Myrad's assertions to the contrary, as well as those of the dissent, are predicated on their incorrect views that the substitute trustee's sale conveyed only the Casa Grande Apartments.

**"Breach of duty" and conspiracy**

Myrad also asserts that it has raised a fact issue precluding summary judgment on its claims against Cobb for damages for "breaching duties" as a substitute trustee and conspiring to do so. The appellees contend that summary judgment was appropriate on these claims for the same reasons that it was appropriate regarding the validity of the substitute trustee's sale and correction deed. We agree with the appellees.

As the appellees observe, a trustee or substitute trustee appointed under a deed of trust to exercise a right of sale has a duty only to conduct the sale in compliance with the Deed of Trust and to avoid affirmatively deterring prospective bidders by acts or statements made before or during a foreclosure sale. *See First State Bank v. Keilman*, 851 S.W.2d 914, 921 (Tex. App.—Austin 1993, writ denied). These are the same duties that underlie Myrad's theory that the foreclosure sale was invalid to the extent that it purported to convey both the Casa Grande and La Casa Apartments. Myrad's "breach of trustee's duty" claim for damages, in substance, is merely the alternative remedy available where a foreclosure sale violates section 51.002 or the deed of trust, or chills bidding so as to cause a grossly inadequate sale price—a claim for wrongful foreclosure damages. *See Pentad*

24

*Joint Venture*, 797 S.W.2d at 96.[16]  Summary judgment on Myrad's "breach-of-trustee's duties"

claim is, therefore, appropriate for the same reasons.  And, because this holding negates the element

of an "unlawful action" or "unlawful means" necessary for Myrad to prevail on its conspiracy claim,

*see Keilman*, 851 S.W.2d at 925, summary judgment was appropriate on that claim as well.

**Surplus**

Finally, Myrad asserts that it has raised a fact issue regarding its claim to a declaration

that LaSalle owes it a surplus.  Because the amount of LaSalle's successful credit bid—$978,000—is

undisputed, Myrad's challenge turns on whether it has raised a fact issue regarding whether its

indebtedness at the time of foreclosure was less than the bid amount.  We note again that LaSalle

moved for no-evidence summary judgment on this issue, placing the burden on Myrad to raise a fact

issue regarding each element of its claim.

We observe that the amount of Myrad's indebtedness to LaSalle is a function of the

Note, the Deed of Trust, and the other loan and security documents.  Under these instruments,

Myrad's "debt" is defined as (1) "the payment of the indebtedness evidenced by the Note"; (2) "the

payment of interest, default interest, late charges, and other sums provided in the Note, this Security

Instrument or the Other Security Documents"; (3) "the payment of all other monies agreed to or

provided to be paid by Grantor in the Note, this Security Instrument or the Other Security

---

[16] *Cf. Charter Nat'l Bank–Houston*, 781 S.W.2d at 371-74 (recognizing exception where mortgagee deliberately chilled bidding and injured mortgagor seeks damages rather than setting aside the sale).  In both its appellate briefing and summary judgment papers before the district court, Myrad has acknowledged that the omission of the La Casa property description from the Notice of Substitute Trustee's Sale and subsequent documents was merely an "error" or "mistake."

Documents"; (4) "the payment of all sums advanced pursuant to this Security Instrument to protect and preserve the Property and the lien and the security interest created hereby"; and (5) "the payment of all sums advanced and costs and expenses incurred by [LaSalle] in connection with the Debt or any part thereof, any renewal, extension, or charge of or substitution for the Debt or any part thereof, or the acquisition or perfection of the the security therefore, whether made at the request of [Myrad] or [LaSalle]." LaSalle contends that Myrad's debt at the time of foreclosure was $986,495.78, itemized as follows:

| | | |
|---|---|---|
| Unpaid principal: | $ | 796,313.50 |
| Accrued interest (at note rate): | | 45,788.03 |
| Additional interest (at default rate): | | 36,497.70 |
| Prepayment charges: | | 88,457.22 |
| Outstanding late charges: | | 5,057.47 |
| Property protection advances: | | 20,337.58 |
| Quote revision fee & misc. charges: | | 170.00 |
| Total projected due as of Nov. 7, 2006: | | $992,621.50 |
| Reserves and suspense | | <6,126.02> |
| Net amt. proj. due as of Nov. 7, 2006: | | $986,495.78[17] |

[17] Prior to the temporary injunction hearing, Joe Vickery of Capmark submitted an affidavit containing calculations that correspond to these.

| | |
|---|---|
| Principal: | $796,313.50 |
| Interest: | 45,788.03 |
| Default interest: | 36,497.70 |
| Other applicable charges: | 107,896.25 |
| | $986,495.48 |

26

Myrad disputes only the following components of LaSalle's calculation:

- A $9,004 charge to Myrad's insurance escrow, apparently reflected in LaSalle's "Reserves and Suspense" line item, which was made to purchase coverage on the property a few days before foreclosure. Myrad adduced summary-judgment evidence that the premiums were refunded by the carrier on the day after foreclosure.

- $13,516 of the "property protection advances,"which, Myrad contends,"did nothing to protect the apartments."[18]

- Various $50 charges for "miscellaneous" fees, totaling "at least $600," which Myrad claims were "improperly charged" to its outstanding loan amount.

- Myrad claims that LaSalle improperly failed to credit its reserve accounts with interest.[19]

We conclude that Myrad has raised a fact issue regarding LaSalle's $9,004 advance for insurance. Specifically, Joe Vickery, Capmark's officer who oversaw the foreclosure on behalf of LaSalle, testified that he authorized the advance a few days before foreclosure, yet acknowledged that the carrier refunded that amount on the day after foreclosure. This evidence raises a fact issue

The $107,896.48 of "other applicable charges" matches the sum of prepayment charges ($88,457.22), outstanding late charges ($5,057.47), property protection advances ($20,337.58), and "quote revision fee and misc. charges" ($170), net of reserves and suspense ($6,126.02) as reflected in the revised Conditional Statement.

[18] Myrad complains that LaSalle charged it for three appraisals of the apartments in the amounts of $500, $5,200 and $950. It also takes issue with charges for environmental assessments—$2,615 and $2,351—plus a $1,900 charge for review of those assessments. Myrad does not appear to challenge the remaining component of the property protection advances, a $6,817.58 charge for legal expenses.

[19] Myrad does not quantify the amount of interest it claims it is owed on its reserve accounts. Excluding only the $9,004 in challenged insurance payments, $13,517 in disputed property protection advances, and Myrad's estimated $600 in "improperly charged" miscellaneous fees from LaSalle's calculation of Myrad's debt would yield a total debt of approximately $963,375. In other words, Myrad is claiming a surplus of approximately $14,600 (the 978,000 credit bid less $963,375), plus whatever amount of interest it claims to be owed on its reserve accounts.

as to whether LaSalle actually incurred the insurance charge that it purported to charge to Myrad and include in its debt.

LaSalle argues that any dispute regarding the insurance charge is moot because it stipulated, for purposes of the summary-judgment proceeding, that it would waive any deficiency claim to the difference between the $986,495.48 it calculated as Myrad's debt and its $978,000 credit bid. We disagree. If the disputed insurance charge is excluded from LaSalle's $986,495.48 debt calculation—and Myrad has raised a fact issue as to whether it should be—its total debt, based on LaSalle's calculations, would be only $977,491.48. This figure is less than the amount of the credit bid. Consequently, Myrad has presented a fact issue regarding the existence of a surplus.

Myrad has also presented summary-judgment evidence raising a fact issue as to whether LaSalle violated its obligations under the loan documents to deposit Myrad's reserve or escrow funds in interest-bearing accounts. In particular, Myrad presented statements reflecting debits and credits to its loan amount that did not contain any credits for interest. LaSalle did not attempt to present summary-judgment evidence establishing that it had actually credited Myrad for interest earned on its reserve or escrow accounts. On this record, we must conclude that Myrad has raised a fact issue regarding its entitlement to this interest as it bears upon the amount of any surplus.

However, we conclude that Myrad has failed to raise fact issues regarding the two remaining categories of charges it challenges, the "property protection advances" and the "miscellaneous fees." Regarding the former, Myrad cites Vickery's testimony that, upon Myrad's default, Capmark utilized the appraisals to ascertain the market value of the property in order to evaluate whether the asset's value would best be preserved through foreclosure or negotiation with

28

the debtor. Myrad fails to demonstrate how these actions fall outside LaSalle's broad rights under the loan agreement, upon default, to protect and enforce its rights in and to the property, and we conclude that it has failed to meet its burden to raise a fact issue on that point. As for its remaining assertions, Myrad offers only vague complaints that LaSalle charged it for a review of environmental assessments, in addition to the assessments themselves, and that the $600 in miscellaneous fees were "improper," without referencing any terms of the loan agreements.

We conclude that Myrad has presented a fact issue as to whether it is owed a surplus attributable to the disputed $9,004 insurance charge and its interest claim. We sustain its issue to that extent.


## CONCLUSION

We affirm the judgment of the district court in part and reverse in part. We affirm the court's final summary judgment declaring that the substitute trustee's sale had conveyed to LaSalle title to both the La Casa and Casa Grande apartments and that the correction deed had vested title in LaSalle to the property described therein. We also affirm the district court's take-nothing summary judgment against Myrad's claims with the exception only of its declaratory claim regarding a surplus. We reverse the district court's summary judgment on that claim and remand for further proceedings consistent with this opinion.

_____

Bob Pemberton, Justice

Before Justices Patterson, Puryear and Pemberton;
  Dissenting Opinion by Justice Patterson

Affirmed in part; Reversed and Remanded in part

Filed:   January 25, 2008