**RESOLUTION TRUST CORPORATION as Receiver for Southwest Federal Savings Association, Plaintiff,**

v.

**SUMMERS & MILLER GLENEAGLES JOINT VENTURE and Carl Summers, Jr. Defendants.**

**Civ. A. No. 3-91-1076-H.**

United States District Court, N.D. Texas, Dallas Division.

Jan. 17, 1992.

Karen C.R. Washington, Patrick C. Guillot, Gregory L. Housewirth, James E. Urmin, Godwin Carlton & Maxwell, Dallas, Tex., for plaintiff.

Dan D. Davison, Hugh E. Hackney, Fulbright & Jaworski, Dallas, Tex., for defendants.

## MEMORANDUM OPINION AND ORDER

SANDERS, Chief Judge.

Before the Court are Plaintiff's Motion for Summary Judgment, filed September 12, 1991, Defendant's Amended Response, filed October 28, 1991, and Plaintiff's Reply, filed December 20, 1991.

### Background

Plaintiff has brought this suit to recover from Defendants the deficiency balance allegedly owing on two promissory notes following Plaintiff's foreclosure upon the real property securing the notes. The First Note, executed on September 5, 1985 by Defendant Summers & Miller Gleneagles Joint Venture ("Joint Venture") had a face amount of $18,530,400.00 payable to Southwest Savings Association ("Southwest"), the predecessor to Southwest Federal Savings Association, now held in receivership by the RTC. The first note was secured by

a Deed of Trust recorded in Book 2208, Page 91–116, of the Deed Records of Collin County, Texas. Joint Venture executed a second note for $125,000 on May 30, 1989, also payable to Southwest. The second note was secured by a Deed of Trust recorded in Volume 64, Page 975, *et seq.* in the Deed Records of Collin County, Texas. Defendants provided additional security for the two notes on June 6, 1988, as evidenced by another Deed of Trust, recorded in Volume 2853, Page 201, *et seq.* in the Deed Records of Collin County, Texas. Furthermore, on September 5, 1985, Defendant Carl Summers, Jr. executed an Unconditional Guaranty in favor of Southwest covering the first and second notes.

Joint Venture defaulted on both notes and notice and demand letters were sent to Joint Venture and to Summers on March 30, 1990 and April 6, 1990. The real property securing the payment of the two notes was foreclosed on May 1, 1990. At the foreclosure sale, the property covered by the Deeds of Trust was struck off and sold to the beneficiary of the Deeds of Trust, leaving a deficiency of $10,994,304.75. Plaintiff has now moved for summary judgment to recover that deficiency.

Defendants do not dispute that they executed the various aforementioned loan documents. Nor do they dispute that they defaulted on the notes and received appropriate notice of default and demand by Plaintiff. Their sole defense is that the property descriptions in the notices of foreclosure were not accurate. The foreclosure involved two separate tracts of land. Defendants state that the two property descriptions appended to the notices' "save and except clauses" were transposed with each other. This clerical error resulted in an offer of more land for sale than was actually the case as to one tract, and an offer of less land for sale than was actually the case as to the other tract. Defendants contend that the error misled the purchasing public as to the size and nature of the land being sold and discouraged prospective purchasers who would otherwise have participated in the sale.

## Summary Judgment

Summary judgment is proper when the pleadings and evidence on file show that no genuine issue exists as to any material fact and that the moving party is entitled to judgment or partial judgment as a matter of law. *See* Fed.R.Civ.P. 56. As the Fifth Circuit stated in *Christophersen v. Allied–Signal Corp.*, 902 F.2d 362, 364 (5th Cir. 1990), "[b]efore a court may grant summary judgment, the moving party must demonstrate that it is entitled to judgment as a matter of law because there is no actual dispute as to an essential element of the plaintiff's case." A movant for summary judgment need not support the motion with evidence negating the opponent's case. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). On the other hand, the party opposing the motion prevails if it presents any evidence tending to support the claim and all evidence must be viewed in the light most favorable to the motion's opponent. *See Gremillion v. Gulf Coast Catering Co.*, 904 F.2d 290, 292 (5th Cir. 1990). Summary judgment may be entered against a party if after adequate time for discovery the party fails to establish the existence of an element essential to his or her case and as to which he or she will bear the burden of proof at trial. *See Celotex*, 477 U.S. at 324–26, 106 S.Ct. at 2553–54.

## Discussion

To resist Plaintiff's action to collect the deficiency, Defendants must present evidence that (1) there was an irregularity in the foreclosure process and (2) the irregularity caused the property to be sold for a grossly inadequate price or otherwise "chilled" the bidding process. *See Savers Fed. Sav. & Loan Ass'n v. Reetz*, 888 F.2d 1497, 1503 (5th Cir.1989); *Charter Nat. Bank–Houston v. Stevens*, 781 S.W.2d 368, 371 (Tex.App.1989, writ denied). Here, there is no question that an irregularity in the foreclosure process occurred. An incorrect description of the property contained in the various notices of foreclosure sale may constitute a defect in the foreclosure process. *Southwest Federal Savings Assoc. v. Royal–Belt Line*

*Joint Venture,* CA3–90–1589–D (N.D.Tex. June 28, 1991, Fitzwater, J.); *see Diversified Developers, Inc. v. Texas First Mortg. REIT,* 592 S.W.2d 43–44, 45 (Tex.Civ.App. 1979, writ ref'd n.r.e.).

▬ The issue is whether the irregularity caused the property to be sold for a grossly inadequate price. Defendants contend that the causation element is a question of fact ordinarily reserved for the jury. Yet Defendants have provided "no evidence that any prospective bidder was prevented or deterred in any manner from bidding at the trustee's sale." *Royal–Beltline Joint Venture,* slip op. at 5. The only evidence offered by Defendants is the Affidavit of Carl W. Summers who opines that the total price obtained at the foreclosure sale ($4,068,000) was lower than the property's alleged fair market value ($6,385,000). That contention does not establish that prospective bidders were deterred or prevented from bidding at the foreclosure sale. Moreover, "[m]ere inadequacy of consideration alone does not render a foreclosure sale void if the sale was legally and fairly made." *Diversified Developers, Inc.,* 592 S.W.2d at 45.

Defendants have not, therefore, raised a fact issue and Plaintiff is entitled to summary judgment. In any event, Plaintiff has presented evidence that Southwest Federal was the sole bidder at the foreclosure sale and that no prospective bidder was in any way deterred from bidding at the sale. Affidavit of Abby S. Tabb, Substitute Trustee. In his affidavit, the Substitute Trustee states that he has "extensive experience" in foreclosure sales and that, in his opinion, the bid price was not affected by the transposition of the save and except clauses. *See* Tabb Affidavit at para. 9.

### Conclusion

Because Defendants have failed to raise a fact issue as to whether the irregularity in the foreclosure process caused the property to be sold for a grossly inadequate price or otherwise chilled the the bidding process, an element essential to their defense, Plaintiff's Motion for Summary Judgment is GRANTED. Counsel for

Plaintiff shall prepare and present for entry an appropriate Judgment by *noon, January 23, 1992.*

SO ORDERED.