TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






ON MOTION FOR REHEARING









NO. 03-07-00240-CV






Myrad Properties, Inc., Appellant


v.


LaSalle Bank National Association, as Trustee for the Registered Holders of GMAC

Commercial Mortgage Securities, Inc; Commercial Mortgage Pass-Through Certificates,
Series 1997-C1; Robin Green; and Melissa Cobb, Appellees






FROM THE DISTRICT COURT OF BELL COUNTY, 169TH JUDICIAL DISTRICT

NO. 220061.C, HONORABLE RICK MORRIS, JUDGE PRESIDING





O P I N I O N


 Myrad has filed a motion for rehearing. We withdraw our opinion, dissenting opinion
and judgment issued on January 25, 2008, and substitute the following in its place. We overrule
Myrad's motion for rehearing.

 This is an appeal from a final summary judgment on claims arising from the non-judicial foreclosure of two apartment complexes that had secured a single note under a single deed
of trust. The central issue in this case, presented in cross-motions for summary judgment, concerns
the legal effect of an error in the notice of foreclosure sale: a definition of the "property" to be sold
that incorporated a legal description of only one of the apartment complexes that secured the note,
but not the other. We affirm the portions of the district court's judgment predicated on its resolution
of this legal issue. However, because fact issues preclude summary judgment as to a declaratory
claim that the debtor is entitled to a surplus, we must reverse this portion of the judgment and
remand it for further proceedings.


BACKGROUND

Myrad's obligations and default

 The following summary is taken from the undisputed summary judgment evidence. 
In July 1997, the appellant, Myrad Properties, Inc., purchased two non-contiguous parcels of land
in Killeen that each contained a multi-family apartment complex--La Casa Apartments and Casa
Grande Apartments. The La Casa Apartment complex is the larger of the two, having 64 units, while
Casa Grande has only 21 units. Myrad financed its purchase by executing a note in the amount of
$1,050,000 payable to First Security Commercial Mortgage, L.P. (the Note). The Note was secured
by a "Deed of Trust, Security Agreement, and Fixture Filing" (the Deed of Trust). The Deed of Trust
covered "Property" defined to include, among other interests, the "Land"--"The real property
described in Exhibit A-1 and A-2 attached hereto and made a part hereof." Exhibit A-1 is a metes
and bounds description of the parcel on which the La Casa Apartments are located, while A-2 is a
legal description of the Casa Grande parcel. The Deed of Trust further specified that the "Property"
also included improvements, fixtures, personal property, and various other rights and interests
related to the "Land." The Deed of Trust was recorded in the real property records of Bell County. 
In 1999, the Note and Deed of Trust were assigned to appellee LaSalle National Bank
Association, as trustee for investors in a large pool of loans. (1) Since that time, LaSalle has been the
mortgagee and holder of the Note.

 The Note required Myrad to make monthly specified payments of principal and
interest. If Myrad failed to make the required payments, the Note and Deed of Trust authorized
LaSalle to assess late charges and to charge a higher default rate of interest until the default was
cured. Other remedies included declaring the entire unpaid amount of the "Debt" immediately due
and payable, which would include (1) the principal sum of the Note; (2) accrued interest, default
interest, late charges, prepayment consideration, and "other sums" as provided in the Note, Deed of
Trust, or other security documents; (3) "all other moneys agreed or provided to be paid" by the Note,
Deed of Trust, or other security documents; (4) "all sums advanced" pursuant to the Deed of Trust
"to protect and preserve the Property and the lien and security interest created thereunder";
and (5)"all sums advanced and costs and expenses incurred" by LaSalle "in connection with the Debt
or any part thereof, any renewal, extension, or change of or substitution for the Debt or any part
thereof, or the acquisition or perfection of the security therefore, whether made or incurred at the
request of [Myrad] or [LaSalle]."

 Under the Deed of Trust, Myrad also agreed that LaSalle would have the right to sell
the "Property" through non-judicial foreclosure:


 sell for cash or upon credit the Property or any part thereof and all estate, claim,
demand, right, title and interest of Grantor therein and rights of redemption thereof,
pursuant to power of sale or otherwise, at one or more sales, as an entity or in parcels,
at such time and place, upon such terms and after such notice thereof as may be
required or permitted by law as follows. The Trustee, his successor or substitute, is
authorized and empowered and it shall be his special duty at the request of the
Beneficiary to sell the Property or any part thereof . . . at the courthouse of any county
in the State of Texas in which any part of the Property is situated, at public venue to
the highest bidder for cash between the hours of 10 o'clock a.m. and 4 o'clock p.m.
the first Tuesday in any month after having given notice of such sale in accordance
with the statutes of the State of Texas then in force governing sales of real estate
under powers conferred by a Deed of Trust. . . .


 Myrad subsequently defaulted on its payment obligations. On August 3, 2006,
LaSalle, through its attorney, appellee Robin Green, issued to Myrad a notice of default, demand for
immediate cure and notice of intent to accelerate the indebtedness due under the note. This
document also referenced the correct book, page number and date of the recorded Deed of Trust,
"covering the real and personal property more particularly described therein and commonly known
as Casa Grande and LaCasa Apartments," and noting the street addresses of each apartment complex. 
Myrad admitted that it received this notice of default and was aware that it referenced both parcels. On August 29, 2006, LaSalle, through Green, issued to Myrad a notice of acceleration
of the indebtedness due under the note. As with the notice of default, this document referenced the
correct book, page number and date of the recorded Deed of Trust and the names and street addresses
of "Casa Grande and LaCasa Apartments." Myrad admitted receiving this document and was aware
that it referenced both parcels.

 On October 16, 2006, LaSalle filed, in the Bell County real property records, its
Appointment of Substitute Trustees and Notice of Substitute Trustee's Sale for Tuesday, November
7, between the hours of 10:00 a.m. and 4:00 p.m, at the Bell County Courthouse. See Tex. Prop.
Code Ann. § 51.002(a) (West 2007) ("A sale of real property under a power of sale conferred by a
deed of trust . . . must be a public sale at auction held between 10:00 a.m. and 4 p.m. on the first
Tuesday of a month. . . . [T]he sale must take place at the county courthouse in the county where the
land is located."). LaSalle also served Myrad with a copy of each document via certified mail and
posted copies on the bulletin board outside the Bell County Clerk's office. See id. § 51.002(b)
(requiring 21 days' notice of sale by posting "at the courthouse door," filing with the county clerk,
and service on each debtor).

 Because the contents and legal effect of the Notice of Substitute Trustee's Sale are
at the center of the parties' dispute, we quote it at length:


NOTICE OF SUBSTITUTE TRUSTEE'S SALE


STATE OF TEXAS §

 §

COUNTY OF BELL §


Date: October 6, 2006


Borrower: Myrad Properties, Inc., a Texas Corporation


Borrower's Address: . . . .


Holder: LaSalle National Bank Association, as
Trustees for the Registered Holders of GMAC
Commercial Mortgage Securities, Inc.,
Commercial Mortgage Pass-Through
Certificates, Series 1997-C1


Holder's Address: . . . 


Mortgage Servicer: Capmark Finance, Inc.


Mortgage Servicer's Address: . . . 


Substitute Trustees: Robin Green, Melissa Cobb, Janice Wright,
Kenneth Strickland, Juanita Strickland, and
Gloria Tanguay or any of them acting alone[ (2)]


Substitute Trustees' Address: Powell Goldstein LLP

 . . . . 


Deed of Trust: Deed of Trust, Security Agreement, and
Fixture Filing


 Date: July 16, 1997


 Grantor: Myrad Properties, Inc., a Texas Corporation


 Lender: First Security Commercial Mortgage, L.P., a
Delaware limited partnership


 Trustee: William Bradshaw


 Secures: Promissory Note ("Note") dated July 16,
1997, in the original principal amount of
$1,050,000 executed by Grantor, payable to
the order of Lender and currently held by
Holder.


 Recording: Recorded July 16, 1997 in the Real Estate
Records of Bell County, Texas (the
"Records") in Volume 3645, Page 300.


Property: The real property described on Exhibit A
attached hereto and made a part hereof for all
purposes, together with all improvements and
personal property described in the Deed of
Trust.


The "Exhibit A" attached to the notice and incorporated into the definition of "Property," however,
is a metes and bounds description of the Casa Grande parcel only.

 The Notice of Substitute Trustee's Sale then states:


 Holder, acting by and through Mortgage Services, has appointed Robin
Green, Melissa Cobb, Janice Wright, Kenneth Strickland, Juanita Strickland, and
Gloria Tanguay, and each of them acting alone, as Substitute Trustees under the Deed
of Trust upon the contingency and in the manner outlined in the Deed of Trust and
in accordance with Chapter 51 of the Texas Property Code. Default has occurred
pursuant to the provisions of the Deed of Trust. The indebtedness evidence by the
Note is now wholly due. Holder, acting by and through Mortgage Servicer, has
instructed Substitute Trustees, and each of them acting alone, to sell the Property
toward the satisfaction of the Note.


 The Deed of Trust may encumber both real and personal property. Notice is
hereby given of Holder's election to proceed against and sell both the real property
and any personal property described in the Deed of Trust in accordance with the
Holder's rights and remedies under the Deed of Trust and Section 9.604 of the Texas
Business and Commerce Code.


 Notice is hereby given that on the Date of Sale, Substitute Trustees, or any
one of them acting alone, will offer the Property for sale at public auction at the Place
of Sale, to the highest bidder for cash, "AS IS". THERE WILL BE NO
WARRANTY RELATING TO TITLE, POSSESSION OR QUIET ENJOYMENT
OR THE LIKE FOR THE PERSONAL PROPERTY INCLUDED IN THE SALE. 
Holder may bid by credit against the indebtedness secured by the Deed of Trust.



The notice was signed by Cobb.

 On November 2, Myrad's bankruptcy counsel sent a letter to Cobb addressing
various issues related to the foreclosure. The letter referenced "Property: Casa Grande and
La Casa Apartments," and began, "With your foreclosure on the above-referenced real estate set
next Tuesday . . . ."

 On November 7, Strickland conducted the substitute trustee's sale on the Bell County
Courthouse steps. Strickland recited the date, book and page number where the Deed of Trust has
been recorded in the Bell County real property records, then read the legal description of the Casa
Grande but not the La Casa parcel. He then conducted the sale. Strickland, on behalf of LaSalle,
made a credit bid $978,000, an amount that LaSalle had calculated based on the estimated amount
of Myrad's debt as of the date of foreclosure.

 LaSalle's credit bid was the sole bid at the sale. LaSalle was issued a Substitute
Trustee's Deed, similar in form to the Notice of Substitute Trustee's Sale, that purported to convey
to it the "Property," again defined as "[t]he real property described on Exhibit A attached hereto and
made a part hereof for all purposes, together with all improvements and personal property described
in the Deed of Trust." As with the Notice of Substitute Trustee's Sale, Exhibit A to the Substitute
Trustee's Deed contained only a legal description of the Casa Grande parcel. This deed was
recorded on the same day.


Correction deed and underlying proceedings

 In the aftermath of the substitute trustee's sale, Myrad asserted the view that the
Substitute Trustee's Sale and deed had conveyed only the Casa Grande Apartments to LaSalle and
not the La Casa Apartments. On November 9, Myrad sued LaSalle, Green and Cobb seeking
declarations under the Uniform Declaratory Judgments Act (3) that the substitute trustee's sale "did not
act to convey any part of the La Casa Apartments"; that the sale (so viewed) "was a valid sale not
subject to being set aside or otherwise collaterally attacked"; that by virtue of the sale, applying the
sale price to Myrad's indebtedness results in the Deed of Trust being satisfied and extinguished; that
applying the sale price to Myrad's indebtedness results in a surplus due and owing to Myrad; and that
"LaSalle no longer has any legal or equitable interest in the La Casa Apartments." Myrad also
sought injunctive relief to bar the appellees from filing any reformed or corrected deed purporting
to assert any legal or equitable interest in the La Casa Apartments or otherwise interfering with
its rights in the complex.

 Myrad obtained a temporary restraining order but, on November 22, following an
evidentiary hearing that is part of the summary-judgment record, the district court dissolved the TRO
and denied Myrad's application for temporary injunction. On the same day, LaSalle filed a
"Correction Substitute Deed." The Correction Substitute Deed was materially identical to the
original Substitute Trustee's Deed except that it attached an "Exhibit A" that tracked the definition
of "Property" from the Deed of Trust. That definition, again, explicitly encompassed both the Casa
Grande and La Casa parcels, as well as improvements, fixtures, personal property, and various other
rights and interests related to each parcel.

 Thereafter, Myrad amended its petition to add claims for declarations that the
"'Correction Substitute Deed' is invalid or void and/or unenforceable" and that it is the owner of the
La Casa Apartments. It also asserted a quiet title claim to set aside the Correction Substitute Deed,
as well as claims for damages from Cobb's "breach of duty" as substitute trustee and conspiracy
to do the same. (4)

 The appellees counterclaimed for declarations that (1) the Substitute Trustee may file
a corrective deed to include foreclosure of the La Casa Apartments; (2) the foreclosure sale was
proper in all respects and had the effect of foreclosing Myrad's interests in both the Casa Grande
Apartments and the La Casa Apartments; and (3) the Substitute Trustee's sale did not result in the
Deed of Trust being satisfied and extinguished. In the event the court found the foreclosure sale was
not properly conducted, LaSalle pled in the alternative for a declaration that it maintained all legal
and equitable interests it was granted by the Deed of Trust and is entitled to re-conduct the
foreclosure sale under Texas law. LaSalle also asserted counterclaims for reformation of the
Substitute Trustee's Deed to include the La Casa Apartments, that the Substitute Trustees be
authorized to rescind the Substitute Trustee's sale and conduct another sale, and that a receiver be
appointed to manage the complexes pending resolution of its declaratory claims.


Summary-judgment motions

 The parties subsequently filed cross-motions for summary judgment. The appellees
sought summary judgment, on both traditional and no-evidence grounds, on each of Myrad's claims. 
They also sought summary judgment on their counterclaims for declarations that the substitute
trustee was authorized to file the correction deed, the foreclosure sale was sufficient to foreclose
Myrad's interest in both the Casa Grande and La Casa Apartments, and that the substitute trustee's
sale did not extinguish or satisfy the Deed of Trust. In the alternative, the appellees moved for
summary judgment on their declaratory claim that if the sale was improperly conducted, LaSalle
maintained all legal and equitable interest in both the Casa Grande and La Casa Apartments under
the Deed of Trust and may rescind the sale and re-conduct the foreclosure.

 Myrad sought summary judgment on claims for declarations that the Substitute
Trustee's sale did not convey the La Casa Apartments, that this sale (so viewed) was valid and not
subject to being set aside, and that the correction deed was invalid. It also sought summary judgment
that "by virtue of the Substitute Trustee's Sale dated November 7, 2006, Myrad is entitled to a credit
of $978,000," an element of its declaratory claim that the sale resulted in a surplus. Myrad also
sought summary judgment, on both traditional and no-evidence grounds, on the appellees' claims
for reformation of the Substitute Trustee's Deed or rescission of the substitute trustee's sale.

 Following a hearing, the district court granted the appellees' summary-judgment
motion "except for rescission" and denied Myrad's motion in its entirety. It rendered final judgment
declaring that the substitute trustee's sale had conveyed to LaSalle title to both the La Casa and Casa
Grande Apartments, that the correction deed had vested title in LaSalle to the property described
therein, and that Myrad should take nothing on its claims. Myrad appeals.


ANALYSIS

 In three issues on appeal, Myrad asserts that the district court erred in granting the
appellees' summary-judgment motion and in denying its motion. Myrad's primary complaint is that
the district court erred in granting summary judgment on the appellees' declaratory claims that the
November 7, 2006 substitute trustee's sale had conveyed both the Casa Grande and La Casa
Apartments and that the correction deed had vested title to both parcels in LaSalle. Relatedly, Myrad
complains that the district court erred in denying summary judgment on Myrad's declaratory claims
regarding the same issues, granting LaSalle's motion against those claims, and in granting summary
judgment against Myrad's quiet title claim.

 The cornerstone of Myrad's arguments is its contention that the foreclosure sale had
the legal effect of conveying only the Casa Grande Apartments due to the erroneous property
description incorporated into the Notice of Substitute Trustee's Sale and read by Strickland at the
sale. So viewed, this transaction, Myrad adds, was accurately memorialized in the Substitute
Trustee's Deed. Consequently, Myrad maintains, the correction deed was invalid and unenforceable
because it purported to convey an entirely new estate rather than merely correcting a scrivener's error
in the original deed. See Halbert v. Green, 293 S.W.2d 848, 851 (Tex. 1956).

 Myrad's premise regarding the legal effect of the foreclosure sale is also the
foundation for the dissent's portrayal of the issues presented (5) and its assertions that LaSalle garnered
a "windfall" from the sale (6) and unilaterally effected a separate conveyance merely by filing a
correction deed. (7)

 Myrad also contends that fact issues precluded the district court from granting
summary judgment against its declaratory claim that the sale yielded a surplus and its claims that
Cobb breached her duties as a substitute trustee and engaged in a conspiracy to do so.


Standard of review

 We review the district court's summary judgment de novo. Valence Operating Co.
v. Dorsett, 164 S.W.3d 656, 661 (Tex. 2005). To prevail on a traditional motion for summary
judgment, the moving party must prove that "there is no genuine issue as to any material fact and the
moving party is entitled to judgment as a matter of law on the issues expressly set out in the motion."
Tex. R. Civ. P. 166a(c); Nixon v. Mr. Prop. Mgmt. Co., 690 S.W.2d 546, 548 (Tex. 1985). If the
movant's motion and summary-judgment evidence establish its right to judgment as a matter of law,
the burden shifts to the nonmovant to defeat summary judgment. The nonmovant then has the
burden to respond to the motion and to present to the trial court any issues that would preclude
summary judgment. City of Houston v. Clear Creek Basin Auth., 589 S.W.2d 671, 678 (Tex. 1979).
Summary judgment is appropriate only when there are no disputed issues of material fact and the
moving party is entitled to judgment as a matter of law. Nixon, 690 S.W.2d at 548. In deciding
whether there exists a disputed fact issue precluding summary judgment, we treat evidence favorable
to the nonmovant as true, and we must resolve every doubt and indulge all reasonable inferences in
the nonmovant's favor. Id. at 548-49.

 A no-evidence motion for summary judgment must be granted if, after an adequate
time for discovery, (1) the moving party asserts that there is no evidence of one or more essential
elements of a claim or defense on which an adverse party would have the burden of proof at trial,
and (2) the nonmovant fails to produce more than a scintilla of summary-judgment evidence raising
a genuine issue of material fact on those elements. Tex. R. Civ. P. 166a(i). A no-evidence summary
judgment is essentially a directed verdict granted before trial, to which we apply a legal-sufficiency
standard of review. King Ranch, Inc. v. Chapman, 118 S.W.3d 742, 750-51 (Tex. 2003); Perdue
v. Patten Corp., 142 S.W.3d 596, 603 (Tex. App.--Austin 2004, no pet.). A no-evidence summary
judgment will be sustained when: (1) there is a complete absence of evidence of a vital fact; (2) the
court is barred by rules of law or of evidence from giving weight to the only evidence offered to
prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a scintilla; or (4) the
evidence conclusively establishes the opposite of a vital fact. King Ranch, 118 S.W.3d at 751. 
We view the evidence in the light most favorable to the nonmovant, disregarding all contrary
evidence and inferences. Id. (citing Merrell Dow Pharms., Inc. v. Havner, 953 S.W.2d 706, 711
(Tex. 1997)). More than a scintilla of supporting evidence exists if the evidence would allow
reasonable and fair-minded people to differ in their conclusions. Id. "Less than a scintilla of
evidence exists when the evidence is 'so weak as to do no more than create a mere surmise or
suspicion' of a fact." Id. (quoting Kindred v. Con/Chem, Inc., 650 S.W.2d 61, 63 (Tex. 1983)).

 When, as here, both parties move for summary judgment on overlapping legal issues
and the district court grants one motion and denies the other, we review the summary-judgment
evidence presented by both sides, determine all questions presented, and render the judgment that
the district court should have rendered. Texas Workers' Comp. Comm'n v. Patient Advocates of
Tex., 136 S.W.3d 643, 648 (Tex. 2004).

 The district court granted appellees' summary-judgment motion on two of their
declaratory claims, rendering judgment declaring that the substitute trustee's sale had conveyed to
LaSalle title to both the La Casa and Casa Grande Apartments and that the correction deed had
vested title in LaSalle to both complexes. Because the appellees had the burden of proof on these
claims, it had the summary-judgment burden of negating any genuine issue of material fact and
establishing that it is entitled to judgment on these claims as a matter of law. See MMP, Ltd.
v. Jones, 710 S.W.2d 59, 60 (Tex. 1996). As for the claims on which Myrad had the burden of
proof, because the appellees asserted both traditional and no-evidence summary-judgment grounds,
they are entitled to judgment as a matter of law if either (1) the record contains no more than a
scintilla of summary-judgment evidence raising a genuine issue of material fact on one or more
essential elements of Myrad's claims, see Forbes Inc. v. Granada Biosciences, Inc., 124 S.W.3d 167,
172 (Tex. 2003), or (2) the summary judgment evidence disproves, as a matter of law, one of the
essential elements of each of Myrad's claims. See Little v. Texas Dep't of Crim. Justice, 148 S.W.3d
374, 381 (Tex. 2004).

Effect and validity of substitute trustee's sale and correction deed

 We first address Myrad's contentions regarding the legal effect of the substitute
trustee's sale and validity of the subsequent correction deed. The parties concur that our resolution
of these issues turns on questions of law rather than disputed facts. We observe again that both
LaSalle and Myrad sought summary judgment regarding these issues. Further, Myrad prays on
appeal that we render judgment on its summary-judgment motion regarding these issues.

 Although the summary-judgment evidence was undisputed that Myrad had actual
notice that LaSalle was seeking to foreclose its lien on both the Casa Grande and La Casa
Apartments, (8) we agree with Myrad and the dissent that the Deed of Trust and section 51.002 of the
property code required LaSalle to provide 21-day's prior notice of the foreclosure sale to both Myrad
and the public. "The statutory notice provisions of section 51.002 seek to not only protect the debtor
by affording him a lengthy notice period in which he may cure, but also adequately inform the third
party public in order to maximize the likelihood of a profitable public sale at market value in which
the debtor may recover his equity in his property." Jasper Fed. Sav. & Loan Ass'n v. Reddell,
730 S.W.2d 672, 674-75 (Tex. 1987). Because a trustee's power to sell the property is derived from
the deed of trust and statute, strict compliance with these requirements is considered a prerequisite
to the trustee's right to make the sale. See Houston First Am. Sav. v. Musick, 650 S.W.2d 764,
768 (Tex. 1983); Childs v. Hill, 49 S.W. 652, 653-53 (Tex. Civ. App.--Dallas 1898, no writ);
Texas Sav. & Loan Assoc. v. Seitzler, 34 S.W. 348, 349 (Tex. Civ. App.--Austin 1896, writ ref'd). 
In other words, noncompliance with these requirements can render a foreclosure sale void. See id.

 The notice of the foreclosure sale must provide a description or other identification
of the property to be sold. See id. Myrad's arguments are premised on the view that the substitute
trustee's sale was invalid as a conveyance of both the Casa Grande and La Casa Apartments
because the Notice of Substitute Trustee's Sale gave no notice complying with the Deed of Trust and
section 51.002 that the La Casa Apartments would be sold. Myrad emphasizes that the Notice of
Substitute Trustee's Sale defined "Property" as "the real property described on Exhibit A attached
hereto and made a part hereof for all purposes, together with all improvements and personal property
described in the Deed of Trust," and that Exhibit A included a legal description only of the Casa
Grande parcel. This "Property," Myrad further points out, is the object of the notice's subsequent
operative statements that "Holder . . . has instructed Substitute Trustees . . . to sell the Property
toward the satisfaction of the Note," and that "Notice is hereby given that on the Date of Sale,
Substitute Trustees . . . will offer the Property for sale at public auction at the Place of Sale, to the
highest bidder for cash." Cf. Williams v. J. & C. Royalty Co., 254 S.W.2d 178, 180 (Tex. Civ.
App.--San Antonio 1952, writ ref'd) (discussing use of defined terms in contracts).

 But, as the appellees observe, the Notice of Substitute Trustee's Sale also included
the following statement:


The Deed of Trust may encumber both real and personal property. Notice is hereby
given of Holder's election to proceed against and sell both the real property and any
personal property described in the Deed of Trust in accordance with the Holder's
rights and remedies under the Deed of Trust and Section 9.604 of the Texas Business
and Commerce Code.


(Emphasis added). Myrad insists that a reasonable person would understand this language to be an
election of remedies under section 9.604 that provides no information regarding what real or
personal property would be sold. (9) We disagree. These statements unequivocally notify the reader
that LaSalle would be proceeding against and selling the real property and any personal property
described in the Deed of Trust. The real and personal property described in the Deed of Trust
included both the Casa Grande and La Casa parcels, and any improvements, fixtures, personal
property, and various other rights and interests related to them. Other portions of the Notice of
Substitute Trustee's Sale provide detailed information regarding the Deed of Trust, including where
it was recorded. These components of the Notice of Substitute Trustee's Sale provide notice
sufficient under the Deed of Trust and section 51.002 that both the Casa Grande and La Casa
Apartments would be sold. See Miller v. Gibralter Sav. & Bldg. Ass'n, 132 S.W.2d 606, 608
(Tex. Civ. App.--Beaumont 1939, writ dism'd judgm't cor.) (reference in notice to recording
date of the deed of trust is sufficient because it provides prospective bidders with "means of
complete information").

 Myrad insists that any reader put on inquiry notice by the notice's cross-references
to the Deed of Trust would review that instrument and ascertain that it permits LaSalle to "sell for
cash or upon credit the Property [defined therein as both apartments complexes] or any part thereof
. . . at one or more sales, as an entity or in parcels." (Emphasis added). From this, Myrad suggests,
a reasonable person would conclude that LaSalle was foreclosing on only the Casa Grande
Apartments. (10) However, the fact that LaSalle had the right to partially foreclose that Property--or
to foreclose on all of that Property, for that matter--would imply nothing about which of these
remedies it had elected. That information would instead come from the notice itself,
which advised the reader that LaSalle would sell the real property and any personal property
described in the Deed of Trust.

 The problem with the Notice of Substitute Trustee's Sale, in other words, is not the
absence of any notice that both the Casa Grande and La Casa Apartments would be sold, but that the
notice is internally inconsistent regarding what property would be sold. Texas courts have not
regarded similar inconsistencies in foreclosure sale property descriptions to be fatal. See Mercer
v. Bloodworth, 715 S.W.2d 693 (Tex. App.--Houston [1st Dist.] 1986, writ ref'd n.r.e.). Mercer
involved a trespass-to-try-title action in which a party's title claim rested upon the validity of a
foreclosure sale. The notice of trustee's sale had "identified a different date of the deed of trust and
an incorrect recording reference," but included a correct metes and bounds description of the
property and also correctly named the trustee. The court held that the error and inconsistency in the
notice did not render the sale invalid. In relevant part, it reasoned that "[a]nyone interested in
bidding at the sale could readily have contacted the trustee to clear up any confusion that may have
been created by the notice." Id. The Notice of Substitute Trustee's Sale here presents merely the
converse: it provides an inaccurate metes and bounds description of the property to be sold but a
correct citation to the deed of trust, identifies the Substitute Trustees, and provides detailed
contact information. As in Mercer, the notice here enabled prospective bidders to readily
contact the substitute trustees to "clear up any confusion that may have been created by the notice." 
We conclude that the erroneous and inconsistent property description in the Notice of Substitute
Trustee's Sale does not constitute a failure to comply with the requirements of section 51.002 and
the Deed of Trust with respect to the foreclosure sale of the La Casa Apartments.

 A foreclosure sale may also be rendered invalid based on affirmative acts by the
mortgagee that deter or "chill" bidding and adversely affect the sale price. See Pentad Joint Venture
v. First Nat'l Bank of LaGrange, 797 S.W.2d 92, 95-96 (Tex. App.--Austin 1990, writ denied). 
Myrad appears to assert such a theory, contending that erroneous property description would have
confused or deterred any prospective bidders interested in purchasing both the Casa Grande and
La Casa Apartments. At least one court has held that, under Texas law, a similar under-inclusion
of property in a notice of foreclosure sale could be actionable under such a theory. See Resolution
Trust Corp. v. Summers & Miller Gleneagles Jt. Venture, 791 F. Supp. 653, 654-55 (N.D. Tex. 1992)
(Texas law). That case involved a deficiency claim in which the debtor, in defense, challenged the
validity of the foreclosure sale. The notice of foreclosure had erroneously transposed the legal
descriptions of two properties that were to be foreclosed in a manner that resulted in "an offer of
more land for sale than was actually the case as to one tract, and an offer of less land for sale than
was actually the case as to the other tract." In the court's view, there was "no question that an
irregularity in the foreclosure process occurred." Id. at 654-55.

 We conclude that the inconsistent property description incorporated into the Notice
of Substitute Trustee's Sale is the sort of irregularity in the foreclosure process that could potentially
have some propensity to confuse or deter potential bidders interested in purchasing both the Casa
Grande and La Casa Apartments. Cobb, in fact, admitted during her deposition that the property
description was "potentially" misleading. For the substitute trustee's sale of both the Casa Grande
and La Casa Apartments to be invalid under a "chilled bidding" theory, however, Myrad also had
the burden of proving that (1) the price or consideration received in the sale was grossly inadequate,
and (2) such inadequacy was caused by the complained-of irregularity. Id. at 655; see also American
Sav. & Loan Assoc. of Houston v. Musick, 531 S.W.2d 581, 587 (Tex. 1975). (11) Perhaps limited by
its theory that the substitute trustee's sale conveyed only the Casa Grande Apartments, Myrad does
not contend that there is any evidence that the Casa Grande and La Casa Apartments were sold for
a grossly inadequate price. (12) Nor does Myrad present a fact issue that any potential bidders were
actually deterred by the erroneous property description. The sole competent evidence that Myrad
cites regarding the effect of the error is Strickland's deposition testimony that on the date of sale, he
had gone to the Bell County Courthouse to sell more than one property, that there were persons
present bidding on other sales he had conducted there, that there were persons present at the sale of
the Myrad property that were potential bidders, and that no one other than LaSalle bid on the
property. (13) This evidence is legally insufficient to support the inference that the other "potential
bidders" were actually deterred from bidding by the erroneous property description. See Summers
& Miller Gleneagles Jt. Venture, 791 F. Supp. at 655; see also Diversified Developers, Inc. v. Texas
First Mort. Reit, 592 S.W.2d 43, 45-46 (Tex. Civ. App.--Beaumont 1979, writ ref'd n.r.e.)
(similarly upholding directed verdict against claim to invalidate foreclosure sale on basis that
previously-released property had been erroneously included in foreclosure notice; finding no
evidence that erroneous property description had caused a grossly inadequate price or that any
prospective bidder was prevented or deterred from bidding at the trustee's sale); City of Keller
v. Wilson, 168 S.W.3d 802, 813 (Tex. 2005) ("when the circumstances are equally consistent with
either of two facts, neither fact may be inferred"); Schlumberger Well Surveying Corp. v. Nortex Oil
& Gas Corp., 435 S.W.2d 854, 858 (Tex. 1968) (noting that "a vital fact may not be established by
piling inference upon inference"). (14)

 We hold that the appellees established, as a matter of law, that the Notice
of Substitute Trustee's Sale gave legally sufficient notice that both the Casa Grande and
La Casa Apartments would be sold at the foreclosure sale and that the appellees conclusively
negated any fact issue as to whether any irregularity rendered that sale invalid. We similarly
hold that the appellees met their burden regarding the substitute trustee's sale itself. The
summary-judgment evidence is undisputed that Strickland recited the date, book and page number
where the Deed of Trust has been recorded in the Bell County real property records, then read the
legal description of the Casa Grande but not the La Casa parcel. This notice parallels that given in
the Notice of Substitute Trustee's Sale.

 We accordingly hold that the district court did not err in granting summary judgment
on the appellees' declaratory claim that the substitute trustee's sale had conveyed to LaSalle title to
both the La Casa and Casa Grande apartments. (15) It is undisputed that the original Substitute
Trustee's Deed did not accurately reflect that conveyance. Consequently, the district court did not
err in granting summary judgment on appellees's declaratory claim that the correction deed vested
title to both parcels in LaSalle. See Adams v. First Nat'l Bank of Bells/Savoy, 154 S.W.3d 859,
871 (Tex. App.--Dallas 2005, no pet.). Summary judgment was likewise appropriate on Myrad's
overlapping declaratory claims and its quiet title action. As noted, Myrad's assertions to the
contrary, as well as those of the dissent, are predicated on their incorrect views that the substitute
trustee's sale conveyed only the Casa Grande Apartments.


"Breach of duty" and conspiracy

 Myrad also asserts that it has raised a fact issue precluding summary judgment on its
claims against Cobb for damages for "breaching duties" as a substitute trustee and conspiring to do
so. The appellees contend that summary judgment was appropriate on these claims for the same
reasons that it was appropriate regarding the validity of the substitute trustee's sale and correction
deed. We agree with the appellees.

 As the appellees observe, a trustee or substitute trustee appointed under a deed of trust
to exercise a right of sale has a duty only to conduct the sale in compliance with the Deed of Trust
and to avoid affirmatively deterring prospective bidders by acts or statements made before or during
a foreclosure sale. See First State Bank v. Keilman, 851 S.W.2d 914, 921 (Tex. App.--Austin 1993,
writ denied). These are the same duties that underlie Myrad's theory that the foreclosure sale was
invalid to the extent that it purported to convey both the Casa Grande and La Casa Apartments. 
Myrad's "breach of trustee's duty" claim for damages, in substance, is merely the alternative remedy
available where a foreclosure sale violates section 51.002 or the deed of trust, or chills bidding so
as to cause a grossly inadequate sale price--a claim for wrongful foreclosure damages. See Pentad
Joint Venture, 797 S.W.2d at 96. (16) Summary judgment on Myrad's "breach-of-trustee's duties"
claim is, therefore, appropriate for the same reasons. And, because this holding negates the element
of an "unlawful action" or "unlawful means" necessary for Myrad to prevail on its conspiracy claim,
see Keilman, 851 S.W.2d at 925, summary judgment was appropriate on that claim as well.


Surplus

 Finally, Myrad asserts that it has raised a fact issue regarding its claim to a declaration
that LaSalle owes it a surplus. Because the amount of LaSalle's successful credit bid--$978,000--is
undisputed, Myrad's challenge turns on whether it has raised a fact issue regarding whether its
indebtedness at the time of foreclosure was less than the bid amount. We note again that LaSalle
moved for no-evidence summary judgment on this issue, placing the burden on Myrad to raise a fact
issue regarding each element of its claim.

 We observe that the amount of Myrad's indebtedness to LaSalle is a function of the
Note, the Deed of Trust, and the other loan and security documents. Under these instruments,
Myrad's "debt" is defined as (1) "the payment of the indebtedness evidenced by the Note"; (2) "the
payment of interest, default interest, late charges, and other sums provided in the Note, this Security
Instrument or the Other Security Documents"; (3) "the payment of all other monies agreed to or
provided to be paid by Grantor in the Note, this Security Instrument or the Other Security
Documents"; (4) "the payment of all sums advanced pursuant to this Security Instrument to protect
and preserve the Property and the lien and the security interest created hereby"; and (5) "the payment
of all sums advanced and costs and expenses incurred by [LaSalle] in connection with the Debt or
any part thereof, any renewal, extension, or charge of or substitution for the Debt or any part thereof,
or the acquisition or perfection of the the security therefore, whether made at the request of [Myrad]
or [LaSalle]." LaSalle contends that Myrad's debt at the time of foreclosure was $986,495.78,
itemized as follows:


Unpaid principal: $ 796,313.50

Accrued interest (at note rate): 45,788.03

Additional interest (at default rate): 36,497.70

Prepayment charges: 88,457.22


Outstanding late charges: 5,057.47


Property protection advances: 20,337.58


Quote revision fee & misc. charges: 170.00


Total projected due as of Nov. 7, 2006: $ 992,621.50


Reserves and suspense <6,126.02>

Net amt. proj. due as of Nov. 7, 2006: $ 986,495.78 (17)

 Myrad disputes the following components of LaSalle's calculation:



 A $9,004 charge to Myrad's insurance escrow, apparently reflected in LaSalle's "Reserves
and Suspense" line item, which was made to purchase coverage on the property a few days
before foreclosure. Myrad adduced summary-judgment evidence that the premiums were
refunded by the carrier on the day after foreclosure.

 $13,516 of the "property protection advances,"which, Myrad contends,"did nothing to
protect the apartments." (18)

 Various $50 charges for "miscellaneous" fees, totaling "at least $600," which Myrad claims
were "improperly charged" to its outstanding loan amount.

 Myrad claims that LaSalle improperly failed to credit its reserve accounts with interest. (19)


 We conclude that Myrad has raised a fact issue regarding the existence of a surplus.
Specifically, Joe Vickery, Capmark's officer who oversaw the foreclosure on behalf of LaSalle,
testified that he authorized the $9,004 advance for insurance a few days before foreclosure, yet
acknowledged that the carrier refunded that amount on the day after foreclosure. This evidence
raises a fact issue as to whether LaSalle actually incurred the insurance charge that it purported to
charge to Myrad and include in its debt.

 LaSalle argues that any dispute regarding the insurance charge is moot because it
stipulated, for purposes of the summary-judgment proceeding, that it would waive any deficiency
claim to the difference between the $986,495.48 it calculated as Myrad's debt and its $978,000 credit
bid. We disagree. If the disputed insurance charge is excluded from LaSalle's $986,495.48 debt
calculation--and Myrad has raised a fact issue as to whether it should be--its total debt, based
on LaSalle's calculations, would be only $977,491.48. This figure is less than the amount of the
credit bid. Consequently, Myrad has presented a fact issue regarding the existence of a surplus.

 Myrad has also presented summary-judgment evidence raising a fact issue as to
whether LaSalle violated its obligations under the loan documents to deposit Myrad's reserve or
escrow funds in interest-bearing accounts. In particular, Myrad presented statements reflecting
debits and credits to its loan amount that did not contain any credits for interest. LaSalle did not
attempt to present summary-judgment evidence establishing that it had actually credited Myrad for
interest earned on its reserve or escrow accounts. On this record, we must conclude that Myrad has
raised a fact issue regarding its entitlement to this interest, which would further bear on the amount
of any surplus.

 For these reasons, we conclude that Myrad has presented a fact issue as to whether
it is owed a surplus. We sustain its issue.


CONCLUSION

 We affirm the judgment of the district court in part and reverse in part. We affirm
the court's final summary judgment declaring that the substitute trustee's sale had conveyed to
LaSalle title to both the La Casa and Casa Grande apartments and that the correction deed had vested
title in LaSalle to the property described therein. We also affirm the district court's take-nothing
summary judgment against Myrad's claims with the exception only of its declaratory claim regarding 
a surplus. We reverse the district court's summary judgment on that claim and remand for further
proceedings consistent with this opinion.



 ____________________________________________

 Bob Pemberton, Justice

Before Justices Patterson, Puryear and Pemberton;

 Dissenting Opinion by Justice Patterson


Affirmed in part; Reversed and Remanded in part on Motion for Rehearing

Filed: March 28, 2008

1. For simplicity, we will refer to this party simply as "LaSalle." We will also use "LaSalle"
to refer to acts taken on its behalf by Capmark Finance, Inc., its mortgage servicer, except where the
distinction between these entities becomes relevant.
2. Green and Cobb, both appellees, are attorneys with Powell Goldstein; Wright is a legal
assistant at the firm. The Stricklands and Tanguay were names provided by the service that Powell
Goldstein or Capmark retained to perform the deed of trust sale.
3. See Tex. Civ. Prac. & Rem. Code Ann. § 37.001-.011 (West 1997 & Supp. 2007).
4. Myrad also asserted its breach-of-duty and conspiracy claims against Strickland, but
subsequently non-suited these claims against him.
5. See Myrad Properties, Inc. v. LaSalle Bank, No. 03-07-00240-CV, ___S.W.3d ___, ___
(Tex. App.--Austin Mar. 28, 2008, no pet. h.) (Patterson, J., dissenting) (asserting that "this case
poses the questions whether (i) a lender, by referencing a deed of trust in the notice [of foreclosure
sale], automatically expands the properties subject to the sale . . . to include all of the properties
contained in the deed of trust" without regard to the contents of the notice and authorizes the trustee
"to unilaterally file a correction deed after the fact to enlarge the property subject to the sale").
6. See id. at ___ n.10 ("Appellees have been granted a windfall and complete reprieve from
their admitted failure to strictly comply with statutory notice requirements."), ___ (purporting
"fidelity to the statutory requirements of non-judicial foreclosure").
7. See id. at ___ (accusing us of "render[ing] the Property description actually contained in
the Notice meaningless"), ___ (urging that "a party unilaterally could file a correction deed to vest
title in a separate piece of property regardless of whether the notice and sale as to the separate
property complied with public notice requirements, a result that would circumvent and eliminate the
statutory requirements"), ___ ("I would hold that a party cannot unilaterally file a correction deed
to vest title in a separate piece of property that was not noticed in compliance with statutory
requirements or specifically included in a non-judicial foreclosure sale.").
8. In addition to receiving notices of acceleration and default that referenced both complexes,
Myrad's bankruptcy counsel sent the November 2 letter to Cobb referencing "Property: Casa Grande
and La Casa Apartments" and acknowledging, "With your foreclosure on the above-referenced real
estate set next Tuesday, . . . ." (Emphasis added). On appeal, Myrad questions whether this letter
"is a clear indication that it was a statement made after an analysis of the notice of sale." Although
Myrad is disputing that its counsel conceded the appellee's interpretation of the Notice of Substitute
Trustee's Sale, it does not appear to contest that it had actual notice that LaSalle was seeking to
foreclose Myrad's interests in both apartment complexes.
9. Section 9.604 of the business & commerce code provides that where a security agreement
covers both personal and real property, a secured party may proceed either under the U.C.C. as to
the personal property alone or against both in accordance with its rights with respect to the real
property. See Tex. Bus. & Com. Code Ann. § 9.604 (West 2002).
10. In support of these contentions and others, Myrad places great emphasis on "expert
opinions" in an affidavit it obtained from a real estate attorney. This testimony includes the
attorney's opinions regarding the proper interpretation and legal effect of the Notice of Substitute
Trustee's Sale and other instruments. Such opinions have no probative value and can neither support
nor defeat summary judgment. Cf. Akin v. Santa Clara Land Co., 34 S.W.3d 334, 339
(Tex. App.--San Antonio 2000, pet. denied) (holding that expert testimony offered to interpret the
terms of a lease agreement was properly excluded because its construction or interpretation presented
a question of law for the court); Pegasus Energy Group, Inc. v. Cheyenne Petroleum Co., 3 S.W.3d
112, 134 (Tex. App.--Corpus Christi 1999, pet. denied) (holding expert testimony giving legal
conclusions concerning interpretation of contract had no probative value and was properly excluded).
Although LaSalle did not object to this affidavit below, failure to object or obtain a ruling on a
substantively defective summary-judgment affidavit does not waive the substantive defect. 
See Paragon Gen. Contractors, Inc. v. Larco Constr., Inc., 227 S.W.3d 876, 884 (Tex. App.--Dallas
2007, no pet.). However, we have considered the arguments asserted in the affidavit as an extension
of Myrad's briefing.
11. Cf. Charter Nat'l Bank-Houston v. Stevens, 781 S.W.2d 368, 371-74
(Tex. App.--Houston [14th Dist.] 1989, writ denied) (contrasting this general rule with exception
applicable where mortgagee deliberately chilled bidding and injured mortgagor seeks damages rather
than to set aside the sale).
12. Nor would the price LaSalle paid at the sale--$975,000, bid as a credit against Myrad's
outstanding debt--be grossly inadequate. La Salle's appraiser testified that the Casa Grande and
La Casa Apartments were collectively worth between $1,170,000 and $1,180,000. However, in his
November 2, 2006 letter, Myrad's bankruptcy counsel represented that an appraiser "has valued the
properties at almost double what your client(s) has asserted is owed." Accepting this statement as
true, the sale price here is still proportionately much greater than those held not to be grossly
inadequate in cases involving similar errors in property descriptions. See Diversified Developers,
Inc. v. Texas First Mort. Reit, 592 S.W.2d 43, 45-46 (Tex. Civ. App.--Beaumont 1979, writ ref'd
n.r.e.) (overruling contention that consideration was grossly inadequate where appraised value of
property was $4 million and sale price was $2.5 million, the outstanding amount of the original
$6 million debt).
13. This is the sole evidence in the summary-judgment record that there were "potential
bidders" or that "third parties attended the foreclosure sale." See ___ S.W.3d at ___, ___ n.15
(Patterson, J., dissenting).
14. These principles are dispositive of whatever implications the dissent draws from Myrad's
claims of equity in the property. See id. at ___ n.10.
15. We express no opinion regarding whether, if the foreclosure sale had been invalid as a
conveyance of both the Casa Grande and La Casa Apartments, it would nonetheless have the legal
effect of conveying only the Casa Grande Apartments, as Myrad contends, or would have rendered
the entire sale invalid. See Shearer v. Allied Live Oak Bank, 758 S.W.2d 940, 942
(Tex. App.--Corpus Christi 1988, writ denied) ("Because the foreclosure sale was void, th[e] debt
is revived and considered outstanding.").
16. Cf. Charter Nat'l Bank-Houston, 781 S.W.2d at 371-74 (recognizing exception where
mortgagee deliberately chilled bidding and injured mortgagor seeks damages rather than setting aside
the sale).
17. Prior to the temporary injunction hearing, Joe Vickery of Capmark submitted an affidavit
containing calculations that correspond to these.


Principal: $ 796,313.50

Interest: 45,788.03

Default interest: 36,497.70

Other applicable charges: 107,896.25

 $ 986,495.48


The $107,896.48 of "other applicable charges" matches the sum of prepayment charges
($88,457.22), outstanding late charges ($5,057.47), property protection advances ($20,337.58), and
"quote revision fee and misc. charges" ($170), net of reserves and suspense ($6,126.02) as reflected
in the revised Conditional Statement.
18. Myrad complains that LaSalle charged it for three appraisals of the apartments in the
amounts of $500, $5,200 and $950. It also takes issue with charges for environmental assessments--
$2,615 and $2,351--plus a $1,900 charge for review of those assessments. Myrad does not appear
to challenge the remaining component of the property protection advances, a $6,817.58 charge for
legal expenses.
19. Myrad does not quantify the amount of interest it claims it is owed on its reserve accounts. 
Excluding only the $9,004 in challenged insurance payments, $13,517 in disputed property
protection advances, and Myrad's estimated $600 in "improperly charged" miscellaneous fees from
LaSalle's calculation of Myrad's debt would yield a total debt of approximately $963,375. In other
words, Myrad is claiming a surplus of approximately $14,600 (the 978,000 credit bid less $963,375),
plus whatever amount of interest it claims to be owed on its reserve accounts.